Elmer COCHRAN and Debbie Cochran  *v.*
Marshall BENTLEY and Cheryl Bentley

06-743                                        251 S.W.3d 253

Supreme Court of Arkansas
Opinion delivered March 1, 2007

[Rehearing denied April 12, 2007.]

*Gregg and Farris*, by: *John C. Gregg*, for appellants.

*Blair & Stroud*, by: *Robert D. Stroud*; *Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*, for appellees.

PAUL E. DANIELSON, Justice. Appellants Debbie and Elmer Cochran appeal from the order of the circuit court granting appellees Cheryl and Marshall Bentley a mandatory injunction against the Cochrans, which directs the Cochrans to remove their recently constructed shop building within 120 days from the date of entry of the order. The Cochrans assert four points on appeal: (1) that the circuit court erred in finding that the Cochrans' building violated the 1940 restrictive covenants and in ordering it removed; (2) that the circuit court erred in enforcing the covenants and in finding that they had failed to adduce facts sufficient to sustain the defense that conditions surrounding the properties had changed since the filing of the restrictive covenants, that the covenants had not been abrogated and ignored by other landowners in the subdivision, and that they had failed to adduce facts sufficient to sustain the defenses of waiver, estoppel, or laches; (3) that the circuit court erred in finding that the restrictive covenants were clear and unambiguous and in applying the rigid and strict application and construction outlined in *Clifford Family*

*Ltd. Liability Co. v. Cox*, 334 Ark. 64, 971 S.W.2d 769 (1998); and (4) that the circuit court erred in denying their posttrial motion to allow them the option, within a specified time, to renovate the structure to conform to the circuit court's interpretation of the protective covenants. We affirm the circuit court.

On February 3, 2004, the Bentleys filed a petition for mandatory injunction with the circuit court. In it, they claimed that they were the owners of Lots 25 and 26 and that the Cochrans were the owners of Lots 27 and 28 of the Denison Heights subdivision located in Independence County.[1] Count I of the petition stated, in part:

> 2. That in the spring and summer of 2003, defendants, Cochran[s], constructed a separate garage, which exceeds thirty (30) feet in height, immediately adjacent to plaintiffs' east property line, completely obstructing the sun and view that they had previously enjoyed.

Count II of the petition, which is most relevant to the instant appeal, alleged that the lots were subject to a protective covenant and that the Cochrans' garage violated the covenant. The Bentleys then prayed that the circuit court enjoin the Cochrans from maintaining the garage; that the circuit court order the garage removed at the Cochrans' cost; and for costs, attorney's fees, and all other relief to which they might be entitled. The Cochrans answered the petition, generally denying its allegations and pleading the affirmative defenses of waiver, estoppel, laches, and any and all other such defenses available under Ark. R. Civ. P. 8. In an amended answer, the Cochrans urged the circuit court to cancel any and all restrictive covenants applicable to their property, as the conditions surrounding their property and the Bentleys' property had substantially changed since the filing of the restrictive covenants and as the covenants or certain portions thereof had been abrogated and ignored by other landowners in the subdivision.

While both parties filed motions for summary judgment, the circuit court denied those motions in a letter opinion filed June 10, 2005. The circuit court then held a bench trial on the matter on March 8, 2006. After hearing the testimony and the arguments of counsel, the circuit court ruled orally:

---

[1] It was later established that the Cochrans owned Lots 27, 28, and part of Lot 29.

My understanding is that thereafter on occasion [Mr. Cochran] would refer to it as a shop. Whatever it is, I find as a fact that it is not a family dwelling. . . . The cases of the Clifford Family Limited Liability Company against Cox, 334 Arkansas 64, 971 Southwest Second, 769, a 1998 case, and Hays against Watson, 250 Ark. 589, 466, Southwest Second, 272, a 1971 case, necessarily control my decision in the present case. Applying the law in these two cited cases to the facts presented here today in the present case, it is my decision that the Plaintiffs must prevail. Therefore, it is my decision that the structure placed by Mr. Cochran must be removed. . . .

The circuit court then memorialized its ruling in its order granting the mandatory injunction, which was entered on March 23, 2006. In it, the circuit court found that the "structure erected on Lot 27, Denison Heights Subdivision is not a dwelling of any type and contains no kitchen, no bathing facilities and no bedrooms." It further cited to the protective covenant and case law and found that the structure did not comply with the clear and unambiguous language of the covenant. The circuit court further found that the Cochrans had failed to adduce facts sufficient to sustain the defenses of waiver, estoppel, and laches, as well as the defenses that conditions surrounding the parties' properties had substantially changed since the filing of the restrictive covenants, that the covenants and certain portions thereof had been abrogated and ignored by other landowners in the subdivision, and that the applicable restrictions were ambiguous and uncertain at best and therefore unenforceable. The circuit court then directed the Cochrans to remove the structure from their lot within 120 days from the date of the order.

On March 28, 2006, the Cochrans moved to modify or amend the mandatory injunction, primarily requesting that the circuit court allow them to modify their structure to conform to the protective covenants. On April 13, 2006, the circuit court issued an order amending its order for mandatory injunction, permitting the Cochrans to postpone removal, should they appeal, until 120 days from the date of the filing of the mandate on appeal. The Cochrans then filed their notice of appeal, posted a supersedeas bond, and moved the circuit court for a stay of the order. The circuit court entered an order staying the mandatory injunction pending appeal and permitting them 120 days from the date of the filing of the mandate on appeal to comply with the orders of the court. The appeal is now before us.

## I. Violation of the Restrictive Covenants

The Cochrans argue that the covenants at issue are too vague, ambiguous, and antiquated to be enforceable. As a result, they submit, the building in question must be permitted for any of the following reasons: it is not specifically excluded by size or other restrictions, it is an outbuilding related to residential use, or it is a detached garage permitted by the covenants. The Bentleys respond that the structure at issue is not a detached, single-family dwelling and, thus, pursuant to the plain language of the protective covenant, the structure should not be permitted to remain.

With respect to bench trials, this court has established the following standard of review:

> In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a) (2002); *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002); *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 60 S.W.3d 458 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Sharp v. State*, 350 Ark. 529, 88 S.W.3d 848 (2002). Disputed facts and determinations of credibility are within the province of the fact-finder. *Sharp, supra*; *Pre-Paid Solutions, Inc. v. City of Little Rock*, 343 Ark. 317, 34 S.W.3d 360 (2001).[2]

*Farm Credit Midsouth, PCA v. Reece Contracting, Inc.*, 359 Ark. 267, 271, 196 S.W.3d 488, 490 (2004) (quoting *Chavers v. Epsco, Inc.*, 352 Ark. 65, 69-70, 98 S.W.3d 421, 423 (2003)).

A review of the record reveals that on December 16, 1940, the protective covenant for the subdivision, known as Denison Heights, was recorded. The covenant provided that all of the covenants were to remain

> with the land and are binding on all parties and persons claiming under them until January 1, 1960, at which time said Covenant shall

---

[2] While this standard of review differs slightly from that used in earlier restrictive-covenant cases, it is the standard used in this court's most recent case, *White v. McGowen*, 364 Ark. 520, 222 S.W.3d 187 (2006).

be automatically extended for successive periods of ten years unless by a vote of the majority of the then owners of the lands it is agreed to change the said covenant in whole or in part.

It further provided:

2. No structure shall be erected, placed, or permitted to remain on any residential building lot other than one detached single family dwelling, not to exceed two and one-half stories high, and a private garage for not more than two cars, and other out buildings incidental to residential use of the lot. No residential structure shall be erected or placed on any building plot, which plot has an area of less than 14150 sq. ft. or a width of less than 93 feet at the front building set-back line, except that a residence may be erected or placed on lots No. 1-2 and 30-A as shown on the recorded plat.

At issue in the instant case is the interpretation of the protective or restrictive covenant and whether the covenant precluded the Cochrans' construction of the structure at issue. We hold that the covenant precluded the Cochrans' structure.

We have observed that restrictions upon the use of land are not favored in the law. *See White v. McGowen*, 364 Ark. 520, 222 S.W.3d 187 (2006). Further, a restrictive covenant will be strictly construed against limitations on the free use of land. *See id.* Thus, all doubts are resolved in favor of the unfettered use of land. *See id.*

Any restriction on the use of land must be clearly apparent in the language of the asserted covenant. *See id.* Where the language is clear and unambiguous, the parties will be confined to the meaning of the language employed, so long as the meaning does not defeat the plain and obvious purpose of the provision. *See Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 233 S.W.3d 145 (2006). In addition, we have said that the general rule governing the interpretation, application, and enforcement of restrictive covenants is that the intention of the parties as shown by the covenant governs. *See Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996).

We cannot say that the language of the covenant at issue is ambiguous. The language is, in fact, quite clear: "*No structure* shall be erected . . . on any residential building lot *other than* one detached single family dwelling, . . . *and* a private garage for not more than two cars, and other out buildings incidental to residential use of the lot." (Emphasis added.) Any structure built on the

lots in the Denison Heights subdivision was required to be residential in purpose, consisting solely of a single-family dwelling and two-car garage and any outbuildings incidental to residential use.

Here, Mr. Cochran referred to his structure as "the shop building." He testified that the building was located on Lot 27, while his home was located on Lot 28, touching Lot 29. As for its purpose, Mr. Cochran said:

> Well, I had some things I needed to do, I'd retired and was about to go crazy without anything to do, so I had a party barge that was parked in Mother's garage, or in her barn, which is still there, I haven't got to that yet, but I wanted to rebuild it. The church bus was sitting out over at the church and I wanted a place to park it. And I built the shop tall enough to play basketball in. . . .

He further testified that he had previously put a church bus inside the building and that the building was large enough to hold two Peterbilt trucks inside of it. In addition, Mr. Cochran described the building as including the following: two levels, heating and air conditioning, two bays, an office with a telephone line, two restrooms, a tool room, and a second floor which housed a heating unit and a hot water heater.

We have previously defined "dwelling" as "a place to live in." *Holaday v. Fraker*, 323 Ark. at 527, 920 S.W.2d at 7. Where, as here, the structure does not contain a kitchen, shower, or living area of some sort, it cannot serve as a place in which to live. Thus, because the Cochrans' structure is a building other than a dwelling *and* a garage, or an outbuilding incidental to residential use, which are the sole permitted structures on each lot within the subdivision, its construction was prohibited by the protective covenant. Accordingly, we affirm the circuit court's order issuing a mandatory injunction.

## II. *Failure to Adduce Facts*

The Cochrans argue that conditions in the subdivision have changed from December 16, 1940, and that the covenants in question are outdated. They contend that none of the deeds from the past decades make reference to, or give notice of, the 1940 restrictive covenants. In addition, the Cochrans claim that the conditions surrounding the property in question have so changed and that the covenants fail to meet the general plan of development

test; thus, they maintain, this court should refuse to enforce or cancel the covenants in question. They further assert that, while the construction of the structure took place over the course of four months, the Bentleys failed to take any action or make any complaint regarding it until after it was substantially completed. For this reason, the Cochrans urge, the Bentleys should be estopped from enforcing the covenants. The Bentleys respond that the Cochrans failed to prove their affirmative defenses they raised below.

### a. Change in Conditions

■ We hold that there has not been a change in conditions sufficient to warrant invalidation of the covenant at issue. In *City of Little Rock v. Joyner*, 212 Ark. 508, 206 S.W.2d 446 (1947), we observed that "equity should entertain jurisdiction to cancel a restrictive covenant in a deed where it would be oppressive and inequitable to give the restriction effect as where the enforcement would have no other result than to harass or injure the one without accomplishing the purposes for which originally made." 212 Ark. at 512, 206 S.W.2d at 448-49. Here, we simply cannot say that it is so oppressive and inequitable to give the instant restriction effect. The requirement that structures being built on the residential lots in the subdivision consist solely of a single-family dwelling and garage and outbuildings incidental to residential use simply does not injure or harass anyone owning property subject to the covenant. Indeed, most protective covenants for residential subdivisions likely include a similar restriction. We, therefore, affirm the circuit court's finding that the Cochrans failed to adduce facts sufficient to warrant invalidating the restriction.

### b. Abrogation of the Covenants

The Cochrans further allege that, because there is no general plan of development, the instant restrictive covenants are not enforceable. They are mistaken. We have held that it is proper to consider whether a general plan of development exists when determining whether a written covenant or restriction contained in the chain of title of the party seeking to avoid the restriction remains valid. *See Knowles v. Anderson*, 307 Ark. 393, 821 S.W.2d 466 (1991). The test for a general plan of development is whether substantially common restrictions apply to lots of like character or similarly situated. *See Harbour v. Northwest Land Co., Inc.*, 284 Ark. 286, 681 S.W.2d 384 (1984).

■ A review of the record reveals that each of the lots in the Denison Heights subdivision was clearly subject to the protective covenant filed in 1940 and all of the restrictions therein. Nor did the Cochrans put forth any evidence to suggest that the lots were not subject to the same restrictions. While certain homeowners may not have complied with all of the restrictions, that alone does not suggest that each lot, including the one owned by the Cochrans, was not subject to the restriction. For this reason, we affirm the circuit court's finding that the Cochrans did not sustain such a defense.

### c. Waiver, Estoppel, and Laches

The circuit court found that the Cochrans had failed to adduce facts sufficient to sustain the defenses of waiver, estoppel, and laches. We cannot say that the circuit court's finding was clearly erroneous.

#### i. Waiver

■ Waiver is the voluntary abandonment or surrender by a capable person of a right known to him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. See Goforth v. Smith, 338 Ark. 65, 991 S.W.2d 579 (1999). Waiver is simply not applicable in the instant case. The Bentleys hardly abandoned or surrendered their rights under the restrictive covenant. They raised their concerns regarding the Cochrans' structure to them and sought judicial relief to enforce the restrictive covenant. Moreover, as the circuit court found, the Cochrans failed to adduce facts to sustain a defense of waiver. Accordingly, we affirm the circuit court's finding on the defense of waiver.

#### ii. Estoppel

The doctrine of estoppel involves both of the parties. See Anadarko Petroleum Co. v. Venable, 312 Ark. 330, 850 S.W.2d 302 (1993). The party claiming estoppel must prove he relied in good faith on some act or failure to act by the other party, and that, in reliance on that act or inaction, changed his position to his detriment. See id.

■ Again, as was the case with waiver, the Cochrans failed to adduce facts sufficient to sustain a defense of estoppel. Estoppel requires a showing of reliance. *See Crystal Oil Co. v. Warmack*, 313 Ark. 381, 855 S.W.2d 299 (1993). Clearly, the Cochrans did not rely on any action or inaction by the Bentleys, where both Debbie and Elmer Cochran testified that they would have continued to build their shop building even had they known about the restrictive covenant at issue. Because the Cochrans failed to adduce facts demonstrating their reliance, a necessary element to a showing of estoppel, the circuit court did not clearly err in finding that the Cochrans failed to establish the defense of estoppel. Thus, we affirm on this point as well.

### iii. Laches

Finally, with respect to the defense of laches, we have said that the right to enforce a restrictive agreement may be lost by laches or acquiescence, especially when one incurs expenditures. *See Goforth v. Smith, supra.* The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *See id.* It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them, that by reason of his delay some adverse party has good reason to believe those rights are worthless or have been abandoned, and that because of a change of conditions during this delay it would be unjust to the latter to permit him to assert them. *See id.* Laches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim. *See id.*

In addition, the application of the doctrine of laches to each case depends on its particular circumstances. *See Self v. Self,* 319 Ark. 632, 893 S.W.2d 775 (1995). As was the case with estoppel, laches requires a showing of some sort that the party asserting the doctrine has suffered or changed its position as a result of the lack of diligence or delay in assertion of rights. *See Crystal Oil Co. v. Warmack, supra.*

Here, both of the Cochrans testified that they would have continued to build their shop even if they had knowledge of the restrictive covenant prohibiting its construction:

COUNSEL FOR THE BENTLEYS: Now let me ask this question: Had you been made aware of the Restrictive

Covenant prior to commencing construction of the building you refer to now as the shop building.

MR. COCHRAN: Yeah.

COUNSEL FOR THE BENTLEYS: Would you not have built it?

MR. COCHRAN: Not have built it?

COUNSEL FOR THE BENTLEYS: Right.

MR. COCHRAN: No, I'd built it.

COUNSEL FOR THE BENTLEYS: You'd have built it. If you'd gone down to the courthouse and read that Restrictive Covenant that's before the Court today, you'd have built it anyway, wouldn't you?

MR. COCHRAN: That's right.

. . . .

COUNSEL FOR THE BENTLEYS: I put the question to [your husband] that had he done the research and had he found this Restrictive Covenant, would he have not built the garage, do you recall what his answer was?

MRS. COCHRAN: He said he would built it [sic].

COUNSEL FOR THE BENTLEYS: And is that your testimony likewise?

MRS. COCHRAN: Yes.

Thus, the Cochrans' testimony was that they did not detrimentally rely on any action or inaction of the Bentleys in deciding to continue the construction of their shop building; nor did they change their position based on any action or inaction of the Bentleys. Indeed, their testimony demonstrates that they were going to build the shop regardless of any complaint, challenge, or covenant. In addition, the Bentleys introduced evidence that Mrs. Bentley was receiving treatment for cancer and that they fre-

quently traveled to Little Rock for that treatment. Thus, they were out of town during much of the construction of the structure at issue.

■ We have held that the issue of laches is one of fact. *See Self v. Self, supra.* In the instant case, the Cochrans failed to show facts demonstrating the applicability of the doctrine of laches. They clearly failed to show facts demonstrating that by reason of any action or inaction on the part of the Bentleys, the restrictive covenant was worthless or abandoned. They further failed to show facts that had the Bentleys complained any earlier, they would have ceased construction. And finally, they failed to adduce facts demonstrating at what point the Bentleys should have known that the shop building was not a dwelling, was nonconforming, and was in violation of the restrictive covenants so as to demonstrate at what point the Bentleys should have first raised their objections. For these reasons, we hold that the circuit court did not clearly err in finding that the Cochrans failed to adduce sufficient facts to support their defense of laches, and we affirm the circuit court's finding.

### III. The Validity of Clifford Family Limited Liability Company v. Cox, *334 Ark. 64, 971 S.W.2d 769 (1998)*

The Cochrans argue that this court should revisit what they suggest is the rigid and strict application doctrine requiring removal of offending structures set forth in this court's opinion in *Clifford Family Ltd. Liability Co. v. Cox,* 334 Ark. 64, 971 S.W.2d 769 (1998). They contend that in each case using the doctrine, the offending party had actual notice of the covenants prior to construction of the offending structure and that it is undisputed that they were unaware of the covenants prior to or until the first complaint was registered by Mr. Bentley after construction was completed. They urge that the balancing of the equities, in considering the relative hardships to the parties, weighs heavily in their favor. The Bentleys submit that the Cochrans have not presented any compelling reason why such established precedent should be overruled. For that reason, they claim, the rule in *Clifford* should be applied to the instant case.

In *Clifford,* the Cliffords alleged that the chancellor erred in refusing to require the Coxes to remove a deck that they constructed on their property. While the chancellor found that the deck encroached upon the setback in violation of the protective

covenants, he declined to order removal of the deck, concluding that removal would be a harsh remedy where he was unable to discern any interference with the Cliffords' enjoyment of their property. Relying on the same rules for interpreting and enforcing restrictive covenants as are set forth earlier in this opinion, the *Clifford* court reversed and remanded the chancellor's decision, holding that the language in the restrictive covenant was clear and that the chancellor erred in examining the respective properties to determine whether the encroachment by the Coxes caused any interference with the Cliffords' enjoyment of their land. The court then remanded the matter to the chancellor to enforce the covenant by requiring the removal of the encroachment.[3]

There is a strong presumption of the validity of prior decisions. *See Council of Co-owners for the Lakeshore Resort & Yacht Club Horizontal Prop. Regime v. Glyneu, LLC*, 367 Ark. 397, 240 S.W.3d 600 (2006). While the Cochrans urge this court, in

---

[3] We note that while the General Assembly took action in response to our *Clifford* decision, it has no bearing on the disposition of the instant case. Indeed, while the *Clifford* case was not specifically referenced by the General Assembly, the General Assembly did respond to this court's decision by enacting Act 1380 of 1999. That act is now codified at Ark. Code Ann. § 18-11-501 (Repl. 2003), which provides:

> Circuit judges are authorized to exercise their discretion to balance the equities between or among parties when considering whether to award injunctions or damages in cases involving encroachment of interior setback lines in residential subdivision restrictive covenants.

Ark. Code Ann. § 18-11-501 (Repl. 2003).

A plain reading of the statute reveals that it pertains only to cases "involving encroachment of interior setback lines." Such a reading is further evidenced by an examination of the emergency clause of the act itself, which states, in pertinent part:

> Recent court decisions appear to hold that any violation of such an interior setback restriction, no matter how slight, requires that the structure or part thereof built in violation of the setback restriction be removed. Such an interpretation of the law *regarding interior setback restrictions* in residential restrictive covenants will result in the needless destruction of property, with resultant displacement of homeowners and their families and substantial expenditures to correct setback restriction violations, which, in actuality, cause little or no damage to adjacent land owners. . . .

Act of Apr. 13, 1999, No. 1380, 1999 Ark. Acts 5660, § 7 (emphasis added). Accordingly, the law regarding restrictive covenants, as set forth in *Clifford*, is still considered valid precedent of this court. *See, e.g., Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 233 S.W.3d 145 (2006); *White v. McGowen*, 364 Ark. 520, 222 S.W.3d 187 (2006) (both of which cite to *Clifford* for its recitation of the law regarding restrictive covenants since the General Assembly's action in 1999).

essence, to overrule the strict application and construction set forth in *Clifford*, this court has held that it is necessary, as a matter of public policy, to uphold prior decisions unless great injury or injustice would result. *See id.* The policy behind stare decisis is to lend predictability and stability to the law. *See id.* In matters of practice, adherence by a court to its own decisions is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases. *See id.* Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. *See id.*

■ No such point has been reached. Here, the Cochrans again argue that they did not have *actual* notice of the protective covenant at issue. However, a review of the record reveals that the protective covenant was filed with the clerk on December 16, 1940, and was a matter of record. Notations on the filing further reflect that the plat could be found on "page 595-A." We have held that "a purchaser of lands takes them with constructive notice of whatever appears in the conveyance which constitutes his chain of title." *Abbot v. Parker*, 103 Ark. 425, 429, 147 S.W. 70, 72 (1912). We have further observed that a landowner is bound by restrictions that appear in a properly recorded deed in his chain of title even though the instrument conveying title to him does not contain the restrictions. *See McGuire v. Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988). Accordingly, the Cochrans were charged with notice of the protective covenants and whether or not they had actual notice of the protective covenants is irrelevant. Whether the Cochrans had constructive or actual notice, they were charged with notice of the covenant and their situation in no way differs from that in *Clifford*. Moreover, our decision in *Clifford* does not dictate removal of a violating structure in every instance. Thus, we decline to revisit or overrule that decision, which clearly sets forth this court's longstanding rules for interpreting, applying, and enforcing restrictive covenants.

### IV. Posttrial Motion

For their final point on appeal, the Cochrans argue that they should be given the opportunity to renovate the structure so that it does contain an adequate kitchen, bathing facility, and bed-rooms, thereby complying with the circuit court's interpretation of the covenants, instead of being forced to remove the entire

structure. The Bentleys respond that because the Cochrans asserted no grounds for a new trial in their posttrial motion and no new trial was sought, the circuit court was correct in denying the Cochrans' motion under Ark. R. Civ. P. 59. They further state that the circuit court was never asked to rule on the Cochrans' modification remedy until all the proof was in and the judgment was entered. According to the Bentleys, the circuit court's findings were reasonable and justified by the proof, were not clearly erroneous, and should not be disturbed.

We have not previously addressed this issue. In *Holaday v. Fraker, supra,* the appellants argued that the trial court clearly abused its discretion to grant injunctive relief by ordering them to remove their shop because the more equitable and appropriate remedy would have been to restrict their use of the structure. We declined to address the appellants' argument, holding that it was not presented to the chancery court.

Nor do we find that the issue was timely raised in the instant case. Arkansas Rule of Civil Procedure 59 permits a circuit court to open a judgment once it has been entered, in an action tried without a jury:

> On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Ark. R. Civ. P. 59(a) (2006). That being said, there are only certain grounds upon which a new trial may be granted:

> (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial; (2) misconduct of the jury or prevailing party; (3) accident or surprise which ordinary prudence could not have prevented; (4) excessive damages appearing to have been given under the influence of passion or prejudice; (5) error in the assessment of the amount of recovery, whether too large or too small; (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law; (7) newly

discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial; (8) error of law occurring at the trial and objected to by the party making the application.

Ark. R. Civ. P. 59(a). The Cochrans, relying on the Michigan Supreme Court's decision in *Sanborn v. McLean*, 233 Mich. 227, 206 N.W. 496 (1925), requested in their motion for new trial that the circuit court grant them the option of modifying their structure to conform to the protective covenants.

█ It is well settled that a motion for new trial is addressed to the sound discretion of the circuit court, and the circuit court's refusal to grant it will not be reversed on appeal unless an abuse of discretion is shown. *See Jones v. Double "D" Props., Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003). An abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *See id.* Here, the Cochrans requested that they be permitted to modify their structure, for the first time, in their motion for new trial. We have repeatedly held that an objection first made in a motion for new trial is not timely. *See id.* Stated differently, an issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal. *See id.* For that reason, a party cannot wait until the outcome of a case to bring an error to the circuit court's attention. *See id.* Because the Cochrans waited until their motion for new trial to request a chance to modify their structure, the circuit court did not abuse its discretion in denying their motion for new trial.

█ █ Nor was the Cochrans' posttrial motion proper under Ark. R. Civ. P. 52. That rule provides in pertinent part:

(b) *Amendment.*

(1) Upon motion of a party made not later than 10 days after entry of judgment, the court may amend its findings of fact previously made or make additional findings and may amend the judgment accordingly. . . .

Ark. R. Civ. P. 52(b)(1) (2006). By its plain language, the rule contemplates new findings and a movant's attempt to have those findings amended. Here, the Cochrans urged the circuit court to consider an alternative remedy, that of modification of the structure.

Thus, the motion was not a true Rule 52(b) motion. *See, e.g., Routh Wrecker Serv., Inc. v. Washington,* 335 Ark. 232, 980 S.W.2d 240 (1998). Consequently, we cannot say that the circuit court erred in denying that portion of the Cochrans' posttrial motion request to modify the structure to conform with the protective covenants.

With respect to the Cochrans' arguments regarding *Sanborn v. McLean, supra,* we do not find the *Sanborn* case to be persuasive authority. In that case, the appellate court permitted the building at issue to be modified, despite its being subject to a reciprocal negative easement. In the instant case, there existed an actual protective covenant, which applied to the Cochrans' lots since 1940, with which the Cochrans were charged notice. Moreover, the protective covenant in the instant case specifically provides that "[n]o structure shall be . . . *permitted to remain* on any residential building lot other than one detached single family dwelling, . . . and a private garage . . ., and other out buildings incidental to residential use." (Emphasis added.) Because we have already determined that the structure constructed on the Cochrans' lot violates the restrictions of the protective covenant, we hold that the circuit court did not err in finding that it should not be permitted to remain and denying the Cochrans' request for modification.[4] For these reasons, we affirm the circuit court's denial of the Cochrans' posttrial motion.

Affirmed.

---

[4] This is especially true for purposes of judicial economy and efficiency, as we question whether our circuit courts' monitoring modification of prohibited structures subject to various restrictive covenants is good practice.