2009 Ark. App. 660

HEIRS AT LAW OF Laura BUTLER;
Heirs at Law of Mattie B. Roberts
et al., Appellants,

v.

Grant BUTLER, Sole Heir of Horace
Greely Butler, Deceased,
Appellee.

No. CA 09–103.

Court of Appeals of Arkansas.

Oct. 7, 2009.

Claude W. Jenkins, Dewitt, for appellants.

Kearney Law Offices, by: Jeffery H. Kearney, Pine Bluff, for appellee.

DAVID M. GLOVER, Judge.

Appellants appeal from the trial court's April 3, 2006 order in which it quieted title in appellee, Grant Butler, to an undivided one-fifth interest in certain real property owned by Horace Greely Butler at the time of his death. Appellants contend that the trial court erred 1) in allowing uncertified photocopies of the purported birth certificate of Grant Butler and affidavit for correction of record, 2) in ignoring appellants claim of laches and estoppel, 3) in dismissing appellants claim of adverse possession, and 4) that the trial court's opinion is not supported by a preponderance of the evidence. We disagree and affirm as modified.

The facts of this case can be summarized briefly. Horace Greely Butler died intestate on September 21, 1986, holding title to an undivided one-fifth interest in the real property that is at issue in this case. He derived his one-fifth interest, as one of five children of Laura Butler, when Laura died intestate in 1985.

In 2004, Grant Butler filed a petition to quiet title in the property, claiming that he was the only child of the decedent, and that as such he owned his father's undivided interest in the property. He also sought an accounting for rents and profits from the property.

Appellants are the descendants of Horace Greely Butler's four siblings. Appellants denied that appellee had any interest in the property, asserting that their Uncle Horace had no children. In addition, they contended that appellee's claim should be barred by adverse possession and laches.

Following the hearing, the trial court concluded that appellee had established by a preponderance of the evidence that Horace Butler was his father. The trial court additionally concluded that appellee had not lost his interest in the property by adverse possession and that his claim was not barred by laches.

### Uncertified Copies of Exhibits

For their first point of appeal, appellants contend that the trial court erred in allowing as evidence uncertified photocopies of two exhibits, Grant Butler's purported birth certificate and his affidavit for correction of record. We disagree.

At the hearing in this matter, the trial court denied the introduction of a copy of appellee's birth certificate but did allow the copy to be proffered as Plaintiff's Exhibit Four and stated that a certified copy of the birth certificate could be introduced as Plaintiff's Exhibit Four–A if it were made available within forty-eight hours. Appellee's attorney proffered the copy and then specifically asked the trial court, "May I submit it to the Clerk?" While not an ideal record, we are convinced that the attorney was referring to the certified copy of the birth certificate. That is, he was clearly asking if, within forty-eight hours, he obtained the certified copy, could he just submit it to the clerk. The trial court, with no specific objection from appellants on the manner of submission, responded that he could. Although appellants are correct that no record was subsequently made of the actual submission of Plaintiff's Exhibit Four–A, the exhibit is in the record that is before this court, and appellants preserved no argument that it was error to allow the exhibit's submission directly to the clerk.

The objections raised by appellants attorney with respect to the introduction of these exhibits were,

> Your Honor, I would object. These are not certified copies. These appear to be photocopies of something, but they are certainly not certified. They are not originals of any kind. And I would object to—

> .    .    .    .    .

> Your Honor, I would continue my objection. We—this case has been pending since 2003. They've had ample time to obtain certified copies from the State, and have them here today. And certainly ample time to find them in his records.

In the appeal to this court, with respect to the birth certificate, appellants cite Rules 1002 and 1005 of the Arkansas Rules of Evidence. These rules specifically provide for the introduction of certified copies of official documents. However, as mentioned previously, appellants did not preserve any argument about the manner in

which the certified copy of the birth certificate was submitted for the record.

The other exhibit challenged is the affidavit for correction of record, which the trial court allowed to be introduced into evidence as Plaintiff's Exhibit Five. Though it, too, is a copy of a certified document, the trial court allowed it, explaining, "I believe that the witness himself can testify that he signed this document and made this Affidavit. So, I am going to—I'm going to find this to be sufficiently authenticated." Appellants' objections to both documents have already been quoted above. Further, the certified copy of this document was also subsequently submitted along with the birth certificate, and it also appears in the record before us even though the trial court had admitted the copy and did not require submission of this certified copy.

Concerning the affidavit of correction of record, appellants also cite Rule 1007 of the Arkansas Rules of Evidence, which provides:

Rule 1007. Testimony or written admission of party.

Contents of writings, recordings, or photographs may be proved by the testimony or deposition of the party against whom offered or by his written admission, without accounting for the nonproduction of the original.

Their argument consists of the following:

The Plaintiff was offering the affidavit in support of his testimony and in support of the purported lawful change of his name to Grant Butler. It should have been excluded by the lower court from evidence under A.R.E. Rules 1002, 1005 and 1007.

Briefly, Rule 1002 provides that to prove the content of a writing, the original writing is required, except as otherwise provided. Rule 1005 provides that the contents of an official record, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original, or, if a copy complying with the foregoing cannot be obtained by the exercise of reasonable diligence, other evidence of the contents may be admitted. Rule 902 provides in pertinent part that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to certified copies of public records.

Rule 1003 of the Arkansas Rules of Evidence, which was not cited by the parties, provides:

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

At trial, appellants only complained that the exhibits were not certified copies. They never raised genuine questions as to the authenticity or continuing effectiveness of the certified copies. Consequently, not only does the record before us contain certified copies of both the birth certificate and the affidavit for correction of record, no genuine questions as to their authenticity or continuing effectiveness were ever raised below. We find no basis for reversal with respect to either of these exhibits.

*Laches & Estoppel*

The gist of appellants second point of appeal is that appellee waited more than twenty years to assert his claim to the property, and that it should therefore be barred by the doctrines of laches and/or estoppel. The trial court rejected the arguments:

13. The principle of laches or estoppel as a bar to an action or claim for

land are not brought into being merely by a delay on the part of a claimant, but by a delay that works a disadvantage to another, provided such disadvantage may come from a loss of evidence, change of title, intervention of equities, the making of substantial improvements to the land and/or other causes involving negligence on one side and injury on the other. *Ueltzen v. Roe*, 242 Ark. 17, 411 S.W.2d 894 (1967).

14. The testimony herein was that since the death of Horace Greeley Butler in 1986, the real estate taxes have been paid and the property has been rented out for farming, there was no evidence that any improvements have been made to the property, and although there has been a devolution of title to some of the undivided interests by reason of death of certain cotenants, no interest in the land has been lost by such cotenants, there is consequently no evidence of any change in the condition of the property, or in the position of the defendants, that would make it inequitable to enforce the plaintiff's claim to an undivided one-fifth interest in the property at this time.

We agree with the trial court's ruling.

In *Royal Oaks Vista v. Maddox*, 372 Ark. 119, 123–24, 271 S.W.3d 479, 483 (2008), our supreme court explained the laches defense:

In *Summit Mall Co. v. Lemond*, 355 Ark. 190, 206, 132 S.W.3d 725, 735 (2003), we stated:

This court has summarized the laches defense by stating that it is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are such as to make it inequitable or unjust for the party to seek relief. *See Anadarko Petroleum Co. v. Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993). The

laches defense requires a detrimental change in the position of the one asserting the doctrine, as well as an unreasonable delay by the one asserting his or her rights against whom laches is invoked. *See Worth v. Civil Serv. Comm'n of El Dorado*, 294 Ark. 643, 746 S.W.2d 364 (1988). *See also Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999).

In addition, the application of the doctrine to each case depends on its particular circumstances. *Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007) (citing *Self v. Self*, 319 Ark. 632, 893 S.W.2d 775 (1995)). T he issue of laches is one of fact. *Self, supra.* A reviewing court does not reverse the circuit court's decision on a question of fact unless it is clearly erroneous. Ark. R. Civ. P. 52(a); *Self, supra.*

And regarding estoppel, the essential elements are:

The elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) the party must intend that its conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) *the party asserting estoppel must rely on the other party's conduct to his detriment.*

*State v. Burger*, 80 Ark. App. 119, 124, 92 S.W.3d 64, 66 (2002) (emphasis added).

Appellants have not demonstrated in any way that they were prejudiced, with respect to the property itself, by the fact that appellee did not assert his rights to the property for almost twenty years following his father's death in 1986. His claims to an accounting for profits and rents were abandoned by appellee, thus,

appellants have suffered no detriment in that regard either.

### Adverse Possession

For their third point of appeal, appellants contend that the trial court erred in dismissing appellants claim of adverse possession. We do not agree.

As our court explained in *Trice v. Trice*, 91 Ark. App. 309, 316–17, 210 S.W.3d 147, 152 (2005):

To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *White River Levee Dist. v. Reidhar*, 76 Ark. App. [225,] 228, 61 S.W.3d [235,] 237 [ (2001) ]. It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Id.* A claimant may "tack on" the adverse-possession time of an immediate predecessor in title. *Id.*

*Additional factors, however, come into play when one co-tenant asserts adverse possession against the others, because the possession of one tenant-in-common is the possession of all.* Hopper v. Daniel, 72 Ark. App. 344, 38 S.W.3d 370 (2001). *Because possession by a co-tenant is not ordinarily adverse to other co-tenants, each having an equal right to possession, a co-tenant must give actual notice to other co-tenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. Id. The statutory period of time for an adverse-possession claim does not begin to run until such knowledge has been brought home to the other co-tenants. Id. There is no hard-and-fast rule by which the sufficiency of an adverse claim may be determined; however, we consider factors such as the relationship of the parties, their reasonable access to the property, kinship, and innumerable other factors to determine if non-possessory co-tenants have been given sufficient warning that the status of a co-tenant in possession has shifted from mutuality to hostility. Id. When there is a family relation between co-tenants, stronger evidence of adverse possession is required. Id.*

(Emphasis added.) The trial court did not clearly err in finding that appellants did not establish adverse possession of the property against appellee. As a co-tenant and family member, appellee did not receive sufficient notice from appellants that they were asserting an adverse claim to his interest in the property.

### Preponderance of the Evidence

For their final point of appeal, appellants contend that the trial court's opinion and order is not supported by a preponderance of the evidence. We disagree.

Grant Butler testified that Horace Greely Butler met with him several times over the years and that he acknowledged Grant as his son. Also, Abraham Phillips, a ninety-.one-year-old witness, testified that he grew up with Horace and that he knew Horace and Grant's mother were married at the time of Grant's birth. He also testified that he spent a lot of time with Horace and that Horace told him that Grant was his son. In addition, the trial court was presented with Grant's birth certificate, discussed above, which designated Horace as his father. To the extent that the testimony of the witnesses for the

appellants disputed the notion that Grant was Horace's son, matters of credibility are for the trial court to decide. *Daimler-Chrysler Corp. v. Smelser*, 375 Ark. 216, 289 S.W.3d 466 (2008).

While not raised by any of the parties, we note that the order quieting title does not contain a specific description of the property at issue. This lack of specificity does not constitute reversible error, but rather an omission or oversight. *See Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). We therefore grant leave to the trial court to amend the order pursuant to Arkansas Rule of Civil Procedure 60(b) by adding a specific description of the property at issue in this case.

Affirmed as modified with instructions.

GLADWIN and HENRY, JJ., agree.