SLIP OPINION

Cite as 2015 Ark. 444

# SUPREME COURT OF ARKANSAS

No. CV-14-869

| | |
|---|---|
| ASHLEY HARTNESS | **Opinion Delivered** December 3, 2015 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT [NO. CV-2012-111] |
| V. | |
| RICK NUCKLES d/b/a RESTORATION PLUS | HONORABLE STEPHEN TABOR, JUDGE |
| APPELLEE | <u>AFFIRMED</u>. |

**RHONDA K. WOOD, Associate Justice**

This appeal arises from a dispute involving the restoration of a 1968 Pontiac Firebird. The car owner sued the body shop that did the repairs for, among other things, breach of express warranty, breach of implied warranty, money had and received, and conversion. The circuit court ruled that the breach of warranty claims failed for lack of notice and ruled that the other claims failed for lack of proof. We affirm the circuit court's judgment.

*Facts and Procedural History*

Ashley Hartness wanted to restore his 1968 Pontiac Firebird. He found a body shop to do the work: Restoration Plus, which was owned by Rick Nuckles. Hartness and Nuckles entered into an oral arrangement. Nuckles agreed to give the car a new paint job, perform body work, and install a new electrical system. Hartness would purchase and provide the new parts as needed, while Nuckles and his employees would provide the services. Hartness claimed that Nuckles promised to do "Barrett-Jackson" or show-car

SLIP OPINION

quality work. At trial, Nuckles adamantly denied having made any such representation. Even so, it is undisputed that the car entered the Restoration Plus body shop in May 2007.

Over the course of the next two and a half years, Nuckles submitted over nineteen invoices to Hartness, which he paid in cash. Hartness also took the car for a number of test drives and gave Nuckles feedback on the progress and quality of the work. Hartness picked up his car in December 2009, believing the restoration was complete. He returned the car on one more occasion to Nuckles for further repairs. After these final repairs, Hartness picked up and kept the vehicle. Despite deep dissatisfaction with the restoration, he did not notify Nuckles of any further concerns with the quality of the work until filing a lawsuit against him in September 2012.

Hartness alleged a number of causes of action in his complaint: breach of express warranty, breach of implied warranty, money had and received, conversion, fraud, deceit, and false representation. A bench trial was held. Hartness introduced pictures of his car that he claimed were taken shortly after the car left the body shop. A number of defects were apparent from the pictures, including chipped paint, misaligned doors, and overall shoddy workmanship. Nuckles testified, however, that there was no way the car looked as represented in the pictures when it left the body shop.

The circuit court did not resolve the factual dispute regarding the existence of an express or implied warranty. Instead, the court found that Hartness failed to comply with the notice requirement of the Uniform Commercial Code (UCC), which requires a party suing on a warranty to notify the breaching party before filing suit. Ark. Code Ann. § 4-2-607(3)(a) (Repl. 2001). The court also rejected the remaining claims. Hartness appeals,

arguing that the UCC-notice requirement applies only to warranties for goods; because his warranty was for services, the notice requirement shouldn't apply. Hartness also argues that the court should have awarded him damages on his money-had-and-received and conversion claims. We accepted certification from our court of appeals because the issue regarding notice is one of first impression. Ark. Sup. Ct. R. 1-2(b)(1) (2015).

*Express and Implied Warranties*

We first address whether giving notice is a prerequisite to filing a breach-of-warranty lawsuit in non-UCC cases. As an initial matter, this court has never explicitly ruled whether express and implied warranties apply in a contract for services. It's true that our commercial code includes express and implied warranties for the sale of goods.[1] But outside the new-home construction context, we have never extended implied warranties to contracts that are exclusively for services.[2] We have recognized an express warranty in a services case, but in that particular case, such a warranty was specifically authorized by statute.[3]

The circuit court never ruled whether express and implied warranties applied to a contract to restore an automobile. The court overlooked this preliminary issue and instead addressed whether the notice requirement was satisfied. Since the court did not directly rule

---

[1] Ark. Code Ann. § 4-2-313 (express warranties); Ark. Code Ann. § 4-2-314 (implied warranty of merchantability); Ark. Code Ann. § 4-2-315 (implied warranty of fitness for a particular purpose).

[2] *See, e.g.*, *Wawak v. Stewart*, 247 Ark. 1093, 1100, 449 S.W.2d 922, 926 (1970) (holding that "an implied warranty may be recognized in the sale of a new house by a seller who was also the builder").

[3] *See Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996).

on the existence of the warranties, nor was it addressed on appeal, the issue is not before us. *See Gwin v. Daniels*, 357 Ark. 623, 184 S.W.3d 28 (2004) Furthermore, this is a court of appellate jurisdiction, and we do not decide issues not directly or indirectly presented in or decided by the trial court. *Id.* In any event, it would be premature for this court to decide whether express and implied warranties attach as a matter of law in a contract for services. The parties never briefed the issue, which has far-reaching implications. Commentators and other jurisdictions are split on whether warranties should apply when the contract is for services rather than goods.[4] Thus, our discussion below is limited to whether there is a notice requirement if such warranties exist.[5]

Hartness's argument regarding notice has two components. First, he argues that UCC notice was not required when the contract was for services. Second, he argues that even if notice was required, his notice was sufficient. The first issue is one of law, which we review de novo. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. The second issue is one of fact, which we review for clear error. Ark. R. Civ. P. 52(a). Again, taking no position on

---

[4] 18 Richard A. Lord, *Willison on Contracts* § 52:45, 258–59 (4th ed. 2001) ("There is a division of opinion whether the express warranty concepts in the Code are also applicable or may be extended to service agreements."). *Compare Pepsi Cola Bottling Co. of Anchorage v. Superior Burner Service Co.*, 427 P.2d 822 (Alaska 1967) (holding that a claim for breach of an implied warranty did not lie in a contract for personal services) *with* Ellen Taylor, *Applicability of Strict Liability Warranty Theories to Service Transactions*, 47 S.C. L. Rev. 231 (Winter 1996) (arguing that implied warranties should attach in a contract for services).

[5] Contrary to the dissent's point of view, this opinion is not advisory. Because the circuit court's only ruling on the breach of warranty claims was that the claims failed for lack of notice, our jurisdiction is limited to this issue. Further, the answer to this question is neither moot nor academic because our decision will have a practical effect on the parties' legal rights: whether notice is required will control Hartness's ability to sue Nuckles for breach of warranty.

whether breach of warranty claims should even exist for a contract that is exclusively for services, we hold that if such warranties do exist, the UCC notice requirements apply.

Under Arkansas's Uniform Commercial Code, a buyer of goods "must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." Ark. Code Ann. § 4-2-607(3)(a). "[T]he giving of reasonable notice is a condition precedent to recovery under the provisions of the commercial code and . . . the giving of notice must be alleged in the complaint in order to state a cause of action." *Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 797, 888 S.W.2d 303, 305 (1994). One purpose of the notice requirement is to give the seller an opportunity to reduce his damages by curing the defect. *Id.* Whether notice under this subsection is sufficient and given in a reasonable amount of time is generally a question of fact. 18 Richard A. Lord, *Williston on Contracts* § 52:44, 251 (4th ed. 2001); *see also* AMI—Civil 2507 (2015) (including as an element of a breach of warranty cause of action whether notice was given in a reasonable time).

This court has often looked to the UCC for guidance on contract principles by analogy. *See Graham Const. Co. v. Earl*, 362 Ark. 220, 208 S.W.3d 106 (2005). There, we held that an express warranty in a contract for services (namely, construction of a home) takes precedence over implied warranties on the same subject. In reaching this conclusion, we looked to the UCC, stating that "[a]lthough the statute is inapplicable to the present case because [the statute] involves the sale of goods . . . the principle should nevertheless apply." *Id.* at 229, 208 S.W.3d at 111. We did the same thing in *Haase v. Starnes*, noting that the UCC "provides guidance on contract principles by analogy." 323 Ark. 263, 272,

915 S.W.2d 675, 680 (1996). Our court of appeals also has relied on the UCC to impose a notice requirement in breach-of-warranty cases involving the construction of a new home. *See Cinnamon Valley Resort v. EMAC Enters., Inc.*, 89 Ark. App. 236, 202 S.W.3d 1 (2005). Therefore, we hold that if an express warranty or an implied warranty is created in a contract for services, the UCC notice requirement from Ark. Code Ann. § 4-2-607 applies. That is, before filing a lawsuit, a person alleging breach of warranty must give the breaching party reasonable notice or be barred from any remedy. This holding vindicates the purpose of the notice requirement, which is to allow the opposing party an opportunity to reduce his damages by curing the defect. It is also in accord with our state's well-established practice of reasoning to the UCC by analogy in contracts for services.

Turning to the facts of this case, we hold that the circuit court's ruling that Hartness failed to give notice of the breach was not clearly erroneous. The testimony at trial indicated that the first notice Nuckles received about his alleged breach of a warranty was in the complaint, which was filed thirty-three months after Hartness picked up the vehicle from the body shop and after he had driven the car for almost 1000 miles. This was an unreasonable amount of time. *See Mozark Fire*, 318 Ark. at 797, 888 S.W.2d at 306 (holding that a second amended complaint, in itself, was insufficient statutory notice for a breach-of-implied warranty claim). Reasonable notice by Hartness would have informed Nuckles exactly how the vehicle failed to live up to Hartness's expectations. Notice also would have given Nuckles an opportunity to cure any defects and would have allowed him to mitigate any damages. It also would have given both parties an opportunity to document the

condition of the car once the restoration was complete. We therefore affirm the circuit court's ruling that Hartness's claims for breach of warranty failed for lack of notice.[6]

*Money Had and Received (Unjust Enrichment)*

Hartness's next argument is that the court should have granted him relief on his claim for money had and received. An action for money had and received provided the foundation for the doctrine of unjust enrichment, *see Frigillana v. Frigillana,* 266 Ark. 296, 307, 584 S.W.2d 30, 35 (1979), and the two actions are essentially the same. *See First Nat'l Bank of Dewitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005); *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 21, 381 S.W.3d 21, 36 (defining an action based on unjust enrichment identically to one for money had and received). Under the principle of unjust enrichment, a "person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated." *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005).

Here, the circuit court denied Hartness's claim for unjust enrichment because he presented no evidence regarding his "damages," ruling that any award would require speculation. Hartness argues on appeal that this ruling was made in error, highlighting multiple pieces of evidence from trial that support his claim for "damages." For example, Hartness argues that he submitted evidence regarding the amount it would cost to repair the

---

[6] Hartness also argues that the issue of notice was tried by consent. However, the record reflects that Nuckles raised lack of notice in his motion to dismiss, his motion for a directed verdict, and in his posttrial brief.

vehicle to its bargained-for condition. In short, Hartness argues that he was entitled to recover based on unjust enrichment because he proved expectation damages.

However, a party is not entitled to expectation damages for unjust enrichment; instead, he is entitled to restitution. "[S]ometimes courts use the term damages when they mean restitution . . . [b]ut . . . the damages remedy and the restitution remedies are always conceptually distinct." 1 Dan B. Dobbs, *Law of Remedies: Damages-Equity-Restitution* § 4.2(3), 581 (2d ed. 1993). "To measure damages, the courts look at the plaintiff's loss or injury; to measure restitution, the courts look at the defendant's gain or benefit." *Id*. A claimant seeking restitution for unjust enrichment can generally recover the value of the benefit conferred upon the party unjustly enriched. *See Sanders v. Bradley Cnty. Human Servs. Pub. Facilities Bd.*, 330 Ark. 675, 956 S.W.2d 187 (1997). The claimant's burden is to "produce evidence permitting at least a reasonable approximation of the amount of the wrongful gain." *Restatement (Third) of Restitution and Unjust Enrichment* § 51 (2011). "If the claimant's evidence will not yield even a reasonable approximation, the claim of unjust enrichment is merely speculative, and disgorgement will not be allowed . . . [and] the claimant's burden of proof, so described, is ordinarily met as soon as the claimant presents a coherent theory of recovery in unjust enrichment." *Id*. at § 51 cmt. i*; accord El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 647, 269 S.W.3d 362, 373–74 (2007) (reversing award of restitution for unjust enrichment because award was speculative).

At trial, Hartness failed to present evidence of a reasonable approximation of Nuckles's wrongful gain. Instead, he focused on the how much it would cost to repair his vehicle to its bargained-for condition. This is not a theory for recovery in unjust enrichment,

and there was no competent evidence about what gains Nuckles received from the transaction that were unjustified.[7] Because there was no evidence regarding the amount of Nuckles's wrongful gain, we affirm the circuit court's ruling that Hartness could not recover for unjust enrichment.

*Conversion*

The final issue is conversion. Hartness argues that the circuit court should have granted him relief on this claim because Nuckles kept the old parts from the car and never returned them. The court denied this claim because, it found, the old parts had been damaged and were generally worthless. The court ruled that Nuckles simply discarded the old parts near the shop because he did not see any further use for them.

Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). To establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights. *Id*. Where the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. *Id*.

---

[7] Hartness did present invoices from Restoration Plus that, according to him, constituted evidence of overcharging. But the circuit court obviously did not believe that any of these charges were wrongful or amounted to an unjustified gain for Nuckles. In any event, Hartness argues that his damages for unjust enrichment should be the amount it would take to repair his car; there is no argument that Nuckles should be stripped of his wrongful gain, which is the proper measure of unjust enrichment.

This was a bench trial, so the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007); Ark. R. Civ. P. 52(a). We view the evidence in the light most favorable to the appellee, resolving all inferences in favor of the appellee. *McQuillan*, *supra*. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Cochran*, *supra*.

On appeal, Hartness argues that the "greater weight of the evidence demonstrates Nuckles either lost or destroyed parts belonging to Hartness, which resulted in specific damages." This argument contradicts the testimony of one of Nuckles's employees, who testified that the old parts were labelled and damaged parts were discarded outside the body shop. In essence, Hartness argues that we should reweigh the evidence in his favor. But this is something we cannot do. We weigh the evidence in favor of the verdict and leave questions regarding credibility with the fact-finder. Applying these standards, we hold the circuit court's findings were not clearly erroneous. We affirm on this point.

Affirmed.

BAKER and GOODSON, JJ., concur.

HART, J., dissents.

**KAREN R. BAKER, Justice, concurring.** I, like the majority, would affirm the circuit court. However, I write separately because I would affirm the circuit court based solely on Hartness's failure to prove damages. The burden of proving damages rests on the party claiming them. *Minerva Enters., Inc. v. Howlett*, 308 Ark. 291, 824 S.W.2d 377 (1992) (citing *Christmas v. Raley*, 260 Ark. 150, 539 S.W.2d 405 (1976)). Although recovery will

SLIP OPINION

not be denied merely because the amount of damages is hard to determine, damages must not be left to speculation and conjecture. *Vowell v. Fairfield Bay Cmty. Club, Inc.*, 346 Ark. 270, 58 S.W.3d 324 (2001).

The circuit court held as follows:

> Plaintiff argues in his brief that certain charges were "clearly excessive" and much of the work was "clearly defective[.]" However, at trial certain things were noticeable by their absence – such as expert testimony regarding the usual time and expense of such a restoration as well as valuation of the vehicle both before and after Defendants' involvement. In general, there was lack of competent testimony as to damages.
>
>     . . . .
>
> The Court has no doubt that at least some of the issues complained of could have, and should have, been performed better. For example, the presence of sand in the vehicle seems inexcusable along with some cosmetic issues depicted in the photographs taken shortly after Plaintiff took possession of the vehicle. However, any damages awarded for those items would require speculation by the Court.

I cannot say that the circuit court clearly erred in finding that the proof of damages in this case was insufficient to allow the court to enter a judgment without resorting to speculation. Of particular concern is the lack of any specific proof about the value of the car when it was retrieved by Hartness as opposed to the value the car would have had if it had been restored to the condition agreed to by the parties.

Because Hartness failed to offer adequate proof of damages, the circuit court was left to speculate as to the amount of damages. For this reason, I would affirm the circuit court and I would not address whether the notice requirement of Arkansas Code Annotated section 4–2–607(3)(a) is applicable to the present case.

GOODSON, J., joins.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent because the majority's opinion embodies mistakes of fact and law. The opinion reveals a fundamental misunderstanding of an individual's constitutional right to contract. Further, it is an advisory opinion—something that this court routinely claims that it does not issue. The majority also misunderstands the circuit court's finding with regard to Mr. Hartness's proof of value.

Mr. Nuckles's defense to Mr. Hartness's breach-of-warranty claims was that Mr. Hartness failed to give him sufficient notice of the defect. While there was a disagreement at trial as to whether Nuckles promised to restore Mr. Hartness's 1968 Pontiac Firebird convertible to "Barrettt-Jackson" quality, it was not disputed that Mr. Hartness was promised at least a quality of restoration that was better than what Mr. Hartness expected to receive when he took possession of his car. Accordingly, there is arguably a disagreement about the terms of the express warranty in the oral contract. Nonetheless, there is no dispute that an express warranty was made. Thus, the existence of a warranty was not an issue at trial. The majority acknowledges that it was never raised, briefed, or ruled on by the circuit court, yet concludes that the reason for the lack of a ruling is that the issue was "overlooked." In my view, for the majority to make such a conclusion is an obvious mistake of fact.

This error was compounded by this court deciding, on its own motion, to make the existence of a warranty a threshold issue, finding that this issue was not ruled on by the circuit court, and using the failure to obtain a ruling as its rationale for barring Mr. Hartness's argument on appeal. The majority's justification for its holding is that the Arkansas Supreme Court has never decided whether "breach of warranty claims should even exist for a contract

that is exclusively for services."[1] The majority clearly misunderstands the role of the Arkansas Supreme Court. We are not lawgivers. Our job is to interpret the law. The right to contract is inalienable and guaranteed by our state constitution, and this court should not create wholesale conditions that will affect all service contracts. *Leep v. St. Louis, I.M. & S. Ry. Co.*, 58 Ark. 407, 25 S.W. 75 (1894). Accordingly, the court has exceeded its power; it has only the power to opine on the constitutionality of a *limitation* imposed on the right to contract. *Id.*

Inexplicably, having barred Mr. Hartness's argument, the majority nonetheless goes on to consider whether the notice requirement stated in Arkansas Code Annotated section 4-2-607(3)(a), a statute dealing with warranties in the sale of goods, should apply "if such warranties do exist." There is no clearer example of an advisory opinion. *Black's Law Dictionary*, 35–36 (6th ed. 1990) defines advisory opinions as follows:

> Such may be rendered by a court at the request of the government or an interested party indicating how the court would rule on a matter should adversary litigation develop. An advisory opinion is thus an interpretation of the law without binding effect. While the International Court of Justice and some state courts will render advisory opinions, the federal courts will not; their jurisdiction being restricted to cases or controversies.

---

[1]Perhaps the majority believes that causes of action that sound in contract are the same as causes of action that sound in tort. It is the practice of this court to selectively recognize common law torts. *See, e.g.*, *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980) (recognizing the tort of outrage or intentional infliction of emotional distress); *see also Goff v. Harold Ives Trucking Co.*, 342 Ark. 143, 27 S.W.3d 387 (2000) (refusing to recognize the tort of spoliation of evidence).

Heretofore, this court did not render advisory opinions. *See, e.g., Arkansas State Hwy. & Transp. Dep't v. O.J.'s Serv. Two, Inc.*, 2015 Ark. 388; *Arms v. State*, 2015 Ark. 364, ___ S.W.3d ____; *Chandler v. Martin*, 2014 Ark. 219, 433 S.W.3d 884.

Lastly, in my view, the majority also makes a mistake of fact when it purports to affirm the circuit court's finding that Mr. Hartness "presented no evidence regarding his 'damages.'" In its findings of fact, the circuit court acknowledged that there was at least some substandard work:

> The Court has no doubt that at least some of the issues complained of could have, and should have, been performed better. For example, the presence of sand in the vehicle seems inexcusable along with some cosmetic issues depicted in the photographs taken shortly after Plaintiff took possession of the vehicle. However, any damages awarded for those items would require speculation by the Court.

Mr. Harness testified that he was not only over-charged for work performed, but also charged for work that was never performed. I am also mindful that Mr. Harness also testified that he believed he was entitled to full refund. Regarding Mr. Harness's desire for a complete refund, there is significance in the circuit court's finding that there was a lack of evidence of the value of the vehicle before and after Nuckles's involvement, as well as the lack of expert testimony to establish the usual and customary time and expense for such restoration. However, while Mr. Harness may not have presented proof that he was entitled to a complete refund, Mr. Nuckles conceded that, based on the pictures and live view of the car that was conducted during the trial, a portion of the work was not up to standard and required a definite amount of shop time to remedy. Suffice it to say that there is a difference between no evidence and incomplete evidence. Certainly Mr. Hartness

presented evidence whereby a trier of fact could find some damages. I would therefore reverse and remand this case for the circuit court to assign a value to sub-standard work.

*Byars, Hickey & Hall, PLLC*, by: *Joe D. Byars, Jr.*, for appellant.

*Smith, Cohen & Horan, PLC*, by: *Stephen C. Smith* and *Jacob K. Wooley*, for appellee.