817 So.2d 407 (2002)
Michael SATTERWHITE, Plaintiff-Appellant,
v.
Dr. Thomas A. REILLY, Defendant-Appellee.
No. 35,926-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*409 Georgia P. Kosmitis, Shreveport, for Plaintiff-Appellant.
Robert G. Pugh, Jr., Shreveport, for Defendant-Appellee.
Before NORRIS, STEWART and CARAWAY, JJ.
NORRIS, C.J.
Plaintiff, Michael Satterwhite, the son of a patient who suffered injuries while a resident at a nursing home, appeals a judgment dismissing claims against defendant, Dr. Thomas Reilly ("Dr. Reilly"), in his capacities as both the medical director and attending physician at NurseCare of Shreveport ("NurseCare"). For the reasons expressed, we affirm.

Factual and procedural background
From November 24, 1993 until February 1, 1995, Mrs. Beatrice Preston was a resident at NurseCare, a nursing home. During her stay there, the medical director of NurseCare, as well as her attending physician, was Dr. Reilly. Upon admittance to NurseCare, Mrs. Preston suffered from Alzeimer's Disease, urinary problems requiring frequent catheterization, peripheral vascular disease, and diabetes. She was ambulatory, but required the assistance of a four-pronged walker. While Mrs. Preston resided at NurseCare, her medical condition declined substantially. She suffered three falls, sustaining a minor hip fracture and an arm/shoulder injury. She also experienced weight loss, urinary tract infections, dehydration, lethargy, and a pressure sore. Her son transferred her to another nursing home on February 1, 1995.
On October 2, 1995, Mrs. Preston and her son, Michael Satterwhite, filed a petition for a medical review panel ("MRP"). *410 They alleged that Dr. Reilly failed to meet the standard of care as her treating physician; by a "summary of claims," they added a claim against him as medical director of NurseCare. On May 23, 1996, before the MRP rendered its finding, Mrs. Preston died at the age of 88, nearly 16 months after she had left NurseCare. On June 5, 1997, the MRP unanimously found that Dr. Reilly had met the applicable standard of care.
On June 19, 1997, Mr. Satterwhite filed the instant wrongful death and survival action, charging Dr. Reilly with medical malpractice as Mrs. Preston's treating physician. He also alleged that as medical director of NurseCare, Dr. Reilly failed to implement and follow federal Medicare and Medicaid regulations affecting nursing homes.
At the close of the plaintiff's case, the court granted Dr. Reilly's motion for involuntary dismissal as to any claim of medical malpractice as Mrs. Preston's treating physician. The trial judge continued the trial on the limited issue of whether he acted negligently as medical director of NurseCare.
At the conclusion of trial, the court rendered written reasons finding that Mrs. Preston received inadequate care at NurseCare and suffered injury as a result. The court also found that Dr. Reilly did not meet all the requirements of a medical director under the Federal Regulations. However, the court found that the record would not support a conclusion that Mrs. Preston's injuries "were caused by the breach of any duty or responsibility owed by or imposed upon Dr. Reilly" as the medical director of NurseCare. The court also found that Dr. Reilly was not vicariously liable for the conduct of NurseCare's staff. Judgment was rendered dismissing all claims.
Mr. Satterwhite appeals devolutively, asserting three assignments of error. The first assignment of error is that the trial court erred in failing to find Dr. Reilly liable, in his capacity as medical director, for Mrs. Preston's injuries. The second assignment of error is that the trial court erred by failing to find that Dr. Reilly's breach of duty harmed Mrs. Preston. Finally, Mr. Satterwhite urges the trial court erred in failing to award damages.

Legal Principles
In an action to recover damages for injuries allegedly caused by another's negligence, Louisiana employs a duty/risk analysis in which the plaintiff must usually prove five separate elements: (1) that the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (2) that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) that the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Perkins v. Entergy Corp., 00-1372 (La.3/23/01), 782 So.2d 606; see also, Roberts v. Benoit, 605 So.2d 1032 (La.1991). The plaintiff must prove every element by a preponderance of the evidence. Smith v. Toys "R" Us, Inc., 98-2085 (La.11/30/99) 754 So.2d 209; Cangelosi v. Our Lady of the Lake Regional Medical Ctr., 564 So.2d 654, 664-65 (La.1989). If the plaintiff fails to prove any one element by preponderance of the evidence, the defendant is not liable. Perkins v. Entergy Corp., supra; Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318, 326.
In a medical malpractice action, the plaintiff has the burden of proving, by a preponderance of the evidence, the applicable *411 standard of care, that the doctor's treatment fell below that standard, and that a causal relationship existed between the alleged negligent treatment and the injuries sustained. La. R.S. 9:2794 A; Fusilier v. Dauterive, 00-1051 (La.7/14/00), 764 So.2d 74; Gordon v. Louisiana State University Bd. of Sup'rs, 27,966 (La.App. 2 Cir. 3/1/96), 669 So.2d 736, writ denied 96-1038 (La.5/31/96), 674 So.2d 263. The mere fact that an injury occurred does not raise a presumption that the physician was negligent. La. R.S. 9:2794 C; Edwards v. Raines, 35,284 (La. App. 2 Cir. 10/31/01), 799 So.2d 1184.
A trial court's finding of fact may not be reversed absent manifest error or unless clearly wrong. LaBove v. Raftery, XXXX-XXXX (La.11/28/01), 802 So.2d 566; Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. The appellate court should not substitute its opinion for the conclusions made by the trial court, which is in a unique position to see and hear the witnesses as they testify. In re: A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47.
An appeal lies from the judgment, not the reasons therefor. Strong's Plumbing, Inc. v. All Seasons Roofing & Sheet Metal, Inc., 32,783 (La.App. 2 Cir. 3/1/00), 754 So.2d 336; Gladney v. Sneed, 32,107 (La.App. 2 Cir. 8/18/99), 742 So.2d 642, writ denied 99-2930 (La.1/14/00), 753 So.2d 215.

Medical director liability
By Mr. Satterwhite's first assignment of error, he contends that the trial court erred in failing to impose liability on Dr. Reilly as medical director. He does not specify whether this claim is regulated by medical malpractice or general negligence, and he offered no expert evidence of the standard of care owed by the medical director of a nursing home. Instead, he asserts that Dr. Reilly failed to adhere to Medicare and Medicaid Requirements for Long Term Care Facilities, 42 C.F.R. § 483.75(i)(2), under which a medical director is responsible for the "implementation of resident care policies" and "the coordination of medical care in the facility." Mr. Satterwhite cites Dr. Reilly's testimony in 2001 that he "could not say" what he did to ensure the implementation and application of resident care policies at NurseCare between 1993 and 1995, and that he could not articulate anything he specifically did to coordinate medical care in the facility. Plaintiff also cites the Nursing Home Regulations Manual: Interpretive Guidelines for the Long-Term Care Survey Process which interprets § 483.75(i) in this manner: "A medical director whose sole function is to approve resident care policies does not meet this [coordinator] requirement." Specifically, he argues that Dr. Reilly failed to set aside time to act as medical director at approximately 10 nursing homes, participate in any meetings, review care plans, review minimum data sets, review incident reports, or address the needs of the facility as required by federal regulations. Mr. Satterwhite also refers to a Louisiana Department of Health and Hospitals ("DHH") report which issued various citations against NurseCare as a result of complaints on behalf of Mrs. Preston, to buttress his argument that Dr. Reilly failed to implement policies in areas of fall prevention, observation, proper hygiene, proper nutrition, hydration, infection control, and medical attention. Mr. Satterwhite finally argues that Dr. Reilly failed to assure adequate staffing at NurseCare.
At the outset, we note that 42 C.F.R. § 483.75(i) sets forth standards for *412 certifying long term care facilities to participate in the Medicare and Medicaid programs. If a nursing home fails to meet these standards, the government may terminate its participation. See, e.g., Oak Lawn Pavilion Inc. v. United States Dept. of Health & Human Serv., 1999 WL 1023920, 64 Soc. Sec. Rep. 371 (N.D. Ill. 11/8/99).
Dr. Reilly urges that no court has ever imposed a tort duty upon a nursing home's medical director based solely on this regulatory provision. We agree. Nothing in the regulation sets forth a standard of care for medical directors; the purpose is plainly to qualify providers for the Medicare and Medicaid programs. On this record and on the authority cited, we decline to hold that 42 C.F.R. § 483.75(i) grants a private cause of action against a medical director of a nursing home or establishes the standard of care or duty that a nursing home medical director owes to the patients of the nursing home he serves, or that a violation of the regulation is negligence per se.[1] Although Dr. Reilly could not specifically recall the policies he implemented or the medical plans he coordinated five years previously, the record shows that he regularly handled physicians' problems, reviewed government nursing home survey reports, investigated the causes of falls, dehydration and constipation, checked for OSHA violations, attended national meetings, and determined patterns of incident reports.
Dr. Reilly further contends that the record supports the finding that he did not breach any applicable standard of care. Notably, the DHH report never states that the medical director at NurseCare failed in his duties. As noted, Dr. Reilly graphically described his numerous functions as medical director. Mr. Jay Burkhart, a nursing home administrator for over 20 years and NurseCare's administrator, testified that Dr. Reilly satisfied the applicable standards for a medical director. Finally, there is nothing in the record to show that Dr. Reilly was responsible for the staffing level at NurseCare.
As noted above, the burden was on Mr. Satterwhite to prove the appropriate standard of care or scope of duty owed by Dr. Reilly as the medical director of Nurse-Care. The mere citation of federal regulations and reference to the DHH report will not suffice to meet this burden of proof.
Finally, we conclude the district court was not plainly wrong to find on this record that Dr. Reilly's conduct did not cause any of Mrs. Preston's harm. See, Pfiffner v. Correa, 94-0992 (La.10/17/94), 643 So.2d 1228. This assignment of error lacks merit.

Causation
By his second assignment of error, Mr. Satterwhite contends that the trial court erred in failing to find that Dr. Reilly's alleged breach of the applicable standard of care caused damage to Mrs. Preston. Mr. Satterwhite argues that Dr. Reilly breached his standard of care as the attending physician, thereby causing Mrs. Preston's damages.[2] As noted, the MRP found that Dr. Reilly met the applicable standard of care, and the trial court granted a motion of involuntary dismissal, pursuant to La. C.C.P. art. 1672 B, rejecting the claim of medical malpractice as attending physician. Rather than the usual method of proving the standard of care under *413 La. R.S. 9:2794, Mr. Satterwhite argues that another provision of the Code of Federal Regulations establishes the standard of care for the attending physician at a nursing home. Under 42 C.F.R. § 483.40(a)(1), the medical care of each resident is supervised by a physician. The physician must "(1) review the resident's total program of care, including medications and treatments, at each visit required by paragraph c of this section; (2) write, sign, and date progress notes at each visit; and (3) sign and date all orders." 42 C.F.R. § 483.40(a)(2). Mr. Satterwhite contends that Dr. Reilly did not comply with this "law" and as a result his mother sustained injuries. He again cites the DHH report, which ordered NurseCare to implement a "Plan of Correction," and argues that his mother's injuries resulted from these and other systematic failures of Dr. Reilly as attending physician.
Mr. Satterwhite offers no authority for the proposition that § 483.40(a) creates a standard of care owed by the attending physician of a nursing home to his patients therein. We are aware of no such authority. We find that this regulatory provision, concerning participation in the Medicare and Medicaid programs, does not establish any medical malpractice standard of care for attending physicians other than that set forth in La. R.S. 9:2794 A and the Medical Malpractice Act, La. R.S. 40:1299.41, et seq. Under applicable law, the claim against Dr. Reilly in his capacity as attending physician is clearly a medical malpractice claim under La. R.S. 40:1299.41 A; see also, Coleman v. Deno, XXXX-XXXX (La.1/25/02), 813 So.2d 303.
There are certain medical malpractice cases, such as the amputation of the wrong limb or leaving a sponge in the patient's body, in which expert testimony is not necessary to establish a breach in the standard of care by a physician. Pfiffner v. Correa, supra. However, the instant case does not involve an act of obvious negligence on the part of the physician. Mr. Satterwhite offered no expert testimony to establish the applicable standard of care, whether Dr. Reilly breached it, and whether that breach resulted in any injuries to the plaintiff. Edwards v. Raines, supra; Pugh v. Beach, 31,361 (La. App. 2 Cir. 12/11/98), 722 So.2d 442.
Contrary to Mr. Satterwhite's contentions, the medical evidence supports a finding that Mrs. Preston had bouts of urinary tract infections not because of any negligence but because a diabetic patient with a neurogenic bladder with urinary retention requiring catheterization "has a higher incident of having infections." Dr. Borne's dep., 85. While the MRP found that Mrs. Preston was mildly dehydrated, Dr. Williams ascribed this to a failure to eat and drink that is common among Alzheimer's patients. The MRP found no biochemical evidence of malnutrition. It is not disputed that Mrs. Preston suffered three falls, the first in March 1994 and two in January 1995. Dr. Reilly had restrained her with a "roll belt," from which she escaped and fell; however, Dr. Williams testified, and the other doctors on the MRP evidently agreed, that this method was appropriate and superior to complete restraint. Finally, the record does reflect that Dr. Reilly prescribed a chemical restraint, Restoril (Tamazepam), and that NurseCare's pharmacist consultant questioned whether this was needed. The medicine was discontinued in November 1994; the record is, at best, inconclusive whether Restoril contributed to or prevented her subsequent falls in January 1995.
Based on the totality of the record, the trial court was not plainly wrong in finding that Mr. Satterwhite did not prove the *414 essential elements of a medical malpractice claim against Dr. Reilly in his capacity as Mrs. Preston's attending physician. Because he was unable to prove either his medical director or his attending physician claim, we pretermit any consideration of his third assignment of error, which addresses damages.

Conclusion
For the reasons expressed, we affirm the trial court's rejection of plaintiff's claims against Dr. Reilly as both the attending physician of Mrs. Preston and as the medical director of NurseCare. Costs of appeal are assessed to plaintiff.
AFFIRMED.
NOTES
[1] We note that the Texas Court of Appeals has reached the same conclusion in an opinion not designated for publication. Raney v. Ashford Hall, 2002 WL 14354 (Tex.App.-Dallas, 1/7/02), petition for review applied for.
[2] In brief, Mr. Satterwhite reiterates his claims with respect to the medical director, but we decline to address this issue again.