2012 Ark. 75

**Donald B. BEDELL; Little Rock Healthcare # 1, Inc. d/b/a Little Rock Healthcare & Rehab; and Heartland Personnel Leasing, Inc., Appellants**

v.

**Brenda WILLIAMS, As Personal Representative of the Estate of Minnie Lee Valentine, Deceased, Appellee.**

No. 11–664.

Supreme Court of Arkansas.

Feb. 23, 2012.

 

Stuart Paul Miller, Jeffrey Wahl Hatfield, Jess Askew III, Jamie Kel Fugitt, Elisa M. White, E.B. Chiles IV, Joseph R. Filasco, Kevin A. Crass, Jamie Huffman Jones and Phillip M. Brick, Jr., Little Rock, Kirkman T. Dougherty, Jeffrey David Rickard and Kynda Almefty–Hernandez, Fort Smith, for appellant.

Melody H. Piazza, Tammera Rankin Harrelson, Deborah Truby Riordan, Brian David Reddick, Brent L. Moss, Brent Lee Moss and Jeffrey Ryan Priebe, Little Rock, Brian Gene Brooks, Greenbrier, for appellee.

PAUL E. DANIELSON, Justice.

Appellants Donald B. Bedell, Little Rock Healthcare #1 d/b/a Little Rock Healthcare and Rehab ("LRHC"), and Heartland Personnel Leasing, Inc., appeal from a judgment in favor of appellee Brenda Williams, as personal representative of the Estate of Minnie Lee Valentine, deceased, which was entered on November 15, 2010, by the Pulaski County Circuit Court. In addition, each appellant also appeals from their motions for judgment not withstanding the verdict and, alternatively, their motions for new trial or remittitur. Appellant Bedell argues the following on appeal: (1) the circuit court deprived Bedell of his defense by prohibiting the use of post discharge evidence; (2) the negligence verdict must be reversed and dismissed; (3) the punitive-damages verdict must be reversed or dismissed; and (4) the compensatory-damages award should be either vacated or reduced. Appellants LRHC and Heartland, for their points on appeal, argue that the circuit

court erred by (1) failing to grant a new trial after making several errors on evidentiary rulings; (2) allowing a witness to give expert testimony on the issue of dignity; (3) denying LRHC's motion in limine to preclude adverse opinion testimony from its nurses pursuant to Ark.Code Ann. § 16–114–207(3); (4) giving a jury instruction on the Residents' Rights Act claim that omitted proximate causation as an element of the claim; (5) instructing the jury on spoliation; and (6) denying Heartland's motion for directed verdict. After review, we reverse, dismissing appellant Bedell and remanding for a new trial as to LRHC and Heartland.

The pertinent facts are these. Minnie Valentine suffered a severe stroke on May 14, 2004. A little over a week after her stroke, Valentine left the care of St. Vincent Hospital and entered into the care of LRHC, a nursing care facility located in Little Rock. She was fully dependent on nursing care for her daily needs and entered LRHC with a feeding tube, a urinary tract infection, and a pressure sore on her coccyx. Despite treatment, Valentine's coccyx pressure sore did not heal. Additionally, she showed signs of dehydration and malnutrition despite her feeding tube and care from a nutritionist.

On June 10, 2004, Valentine was transferred and admitted to Baptist Health Medical Center with pneumonia. Despite treatment from wound-care specialists, Valentine's pressure sore worsened. Baptist continued the basic nutrition plan for Valentine initiated by LRHC. After two weeks at Baptist, Valentine returned to LRHC on June 25, 2004. Her health continued to decline, and her pressure sore continued to worsen. On July 6, 2004, Valentine's nurses reported signs of infection related to her pressure sore to her physician. Subsequently, on July 7, 2004, Valentine was readmitted to Baptist due to infection. Again, despite continuous treatment from wound-care specialists at Baptist, the condition of Valentine's pressure sore declined.

On August 11, 2004, Valentine was discharged from Baptist and admitted to Quapaw Quarter Nursing Center and Rehab, another nursing care facility. There, Valentine's general medical condition continued to decline. Despite receiving weekly treatments from wound-care specialists from the Arkansas Heart Hospital, the pressure sore on Valentine's coccyx steadily worsened and additional pressure sores developed on her ankles and feet, which ultimately necessitated multiple amputations. Valentine died in February 2005, seven months after her second discharge from LRHC.

On February 17, 2006, Williams, as the personal representative of the Estate of Minnie Valentine, filed suit against Donald B. Bedell, the sole member of the governing body for LRHC; Heartland; HC Services & Solutions; Claims Administrators of Arkansas, LLC; Arkansas Health Care Holdings; Arkansas Health Care Management, LLC; and Care Options, Inc., alleging claims for ordinary negligence, medical malpractice, violation of the Residents' Rights Act, and felony neglect. The complaint also asserted several causes of action against Quapaw, including a count for wrongful death, based on allegations that Quapaw had failed to provide appropriate care to Valentine during her residency there from August 11, 2004, through her death in February 2005. Approximately one week prior to trial, Williams nonsuited her claims against Quapaw.

Before trial, the circuit court granted partial summary judgment for Claim Administrators of Arkansas and declared Ark.Code Ann. § 16–114–207(3) unconstitutional as a violation of the separation-of-powers doctrine. During the course of the trial, Williams voluntarily dismissed her

claims against HC Services & Solutions, Claims Administrators of Arkansas, and Arkansas Health Care Holdings. The circuit court granted a directed verdict in favor of Bedell, LRHC, and Heartland on the felony-neglect claim.

Following trial, the jury returned a $5.1 million verdict against LRHC, awarding $1.8 million in compensatory damages for ordinary negligence, $1.9 million in compensatory damages for medical negligence, and $1.4 million in compensatory damages for violation of the Residents' Rights Act. Although the jury also found LRHC liable for punitive damages, it awarded no money on the punitive-damages claim against LRHC. The jury returned a verdict for $350,000 in compensatory damages against Heartland on the ordinary-negligence claim, but found that Heartland had no liability on the remaining claims against it. Additionally, the jury rendered a $5 million verdict against Bedell on the claim for ordinary negligence, awarding $3 million in compensatory damages and $2 million in punitive damages. The jury found no liability against Arkansas Health Care Management, LLC, and Care Options, Inc. The circuit court entered a judgment on these verdicts and dismissed with prejudice all remaining causes of action.

On November 29, 2010, LRHC, Heartland, and Bedell filed motions for new trial and judgment notwithstanding the verdict, which the circuit court denied on December 16, 2010. Thereafter, LRHC, Heartland, and Bedell filed timely notices of appeal on January 6, 2011. Appellants appeal from the final judgment and all orders denying their motions for judgment notwithstanding the verdict and for new trial. Additionally, each appellant appeals all intermediate rulings by the circuit court that affected the above-mentioned judgment and orders.

Our standard of review for a denial of a directed-verdict motion is well settled:

[I]n reviewing the denial of a motion for [a directed verdict], we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not our place to try issues of fact; we simply review the record for substantial evidence to support the jury's verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. A motion for directed verdict should be denied when there is conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions.

*Carter v. Cline,* 2011 Ark. 474, at 10, 385 S.W.3d 745, 752. The same standard holds true for a motion for judgment notwithstanding the verdict. *See id.* A circuit court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is entitled to judgment as a matter of law. *See id.*

A motion for new trial is addressed to the sound discretion of the circuit court, and the circuit court's refusal to grant it will not be reversed on appeal unless an abuse of discretion is shown. *See Cochran v. Bentley,* 369 Ark. 159, 251 S.W.3d 253 (2007). An abuse of discretion means a discretion improvidently exercised, *i.e.,* exercised thoughtlessly and without due consideration. *See id.*

We first address Bedell's argument that the circuit court erred by denying his

directed-verdict motion and his judgment notwithstanding the verdict, as we agree and dismiss Bedell. Bedell argues that a claim of negligence against him could not stand because Williams failed to establish that he owed a duty to Valentine. Williams responds that the circuit court correctly denied Bedell's motions because a duty was established by both a federal regulation and an internal policy of LRHC. We disagree and hold that Bedell, as the president of the corporation that operated LRHC, owed no personal duty to Valentine.

The first issue in determining whether there was evidence of negligence is whether Bedell owed any duty to Valentine. *See Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439. This court has stated that the question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury. *See id.* Thus, the law of negligence requires as an essential element that the plaintiff show that a duty of care was owed. *See id.* Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other. *See id.*

When "it can be shown that an individual employed by a corporation is personally involved in the events surrounding an injury, the individual may be sued." *Bayird v. Floyd*, 2009 Ark. 455, at 6, 344 S.W.3d 80, 84 (quoting *McGraw v. Weeks*, 326 Ark. 285, 294, 930 S.W.2d 365, 367 (1996)). A review of the record and Williams's argument on appeal reveal that there was no attempt to argue that Bedell was actually involved personally in the events surrounding Valentine's injury or her care. Rather, Williams argued, and the circuit court found, that Bedell's duty arose from a federal regulation covering the obligations of governing bodies of nursing homes and from an internal policy of LRHC. We disagree.

Williams argues, as she did below, that 42 C.F.R. § 483.75(d) creates the duty required. It states:

(1) The facility must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility; and

(2) The governing body appoints the administrator who is—

(i) Licensed by the State where licensing is required; and

(ii) Responsible for management of the facility.

However, it is clear to this court that this regulation is a rule that nursing homes must follow to qualify for participation in medicare and medicaid, and we will not interpret it to create a duty in tort. The funding regulations specifically limit themselves to "serve as the basis for survey activities for the purpose of determining whether a facility meets the requirements for participation in Medicare and Medicaid." 42 C.F.R. § 483.1(b).

While this court has not addressed this issue before, the Court of Appeal of Louisiana did in *Satterwhite v. Reilly*, 817 So.2d 407 (La.Ct.App.2002). In *Satterwhite*, the plaintiff sued a nursing home's medical director under 42 C.F.R. § 483.75(i), which states that a facility's medical director must implement resident-care policies and coordinate medical care in the facility. The *Satterwhite* court affirmed dismissal of the claims against the medical director because the regulation did not create a duty:

Dr. Reilly urges that no court has ever imposed a tort duty upon a nursing home's medical director based solely on this regulatory provision. We agree.

Nothing in the regulation sets forth a standard of care for medical directors; the purpose is plainly to qualify providers for the Medicare and Medicaid programs. On this record and on authority cited, we decline to hold that 42 C.F.R. § 483.75(i) grants a private cause of action against a medical director of a nursing home or establishes the standard of care or duty that a nursing home medical director owes to the patients of the nursing home he serves[.]

*Satterwhite*, 817 So.2d at 412.

We find this persuasive in the instant case. Nothing in the regulation cited by Williams imposes a duty in tort, and we decline to hold that section 483.75(d) creates the basis for a separate cause of action here.

Williams also relied on a LRHC internal policy to establish a duty as to Bedell. That policy stated that "a governing body is established for this facility which has full legal authority and responsibility for the operation of this facility." This language appears to summarize the language required by the federal regulation. For the same reasons that the regulation does not create a duty, the policies created to comply with that regulation do not impose a duty. Additionally, allowing these types of internal policies with broad, governing language to create a duty that establishes personal liability of a company's owner would open the door for many lawsuits filed in an attempt to pierce the corporate veil. Generally, internal policies should not create a legal duty where none exists. *See, e.g., Young v. The Gastro–Intestinal Ctr., Inc.,* 361 Ark. 209, 205 S.W.3d 741 (2005) (internal policy instructing that discharged patients not be allowed to drive could not create a legal duty where the law did not recognize one); *Arkansas Louisiana Gas Co. v. Stracener,* 239 Ark. 1001, 395 S.W.2d 745 (1965) (company internal safety policy could not create a legal duty).

While much is made of Dr. Loren Lipson's, Williams's expert, testimony regarding her opinion that a legal duty was created, we take this opportunity to note that the fact that an expert testifies that a duty existed does not make it so. A jury question is not created simply because an expert believes a legal duty exists. *See Young, supra.*

Accordingly, because Bedell owed no legal duty to Valentine, it was error for the circuit court to deny his motion for a directed verdict. We, therefore, reverse the circuit court's ruling and dismiss appellant Bedell. As such, it is unnecessary to discuss Bedell's remaining points on appeal. We now turn to the arguments presented by appellants LRHC and Heartland.

Appellants first argue that the circuit court erred by making several evidentiary errors, including: (1) granting a motion in limine during LRHC's opening statement to exclude relevant evidence; (2) refusing to grant a mistrial or allow for a continuance after excluding that evidence; (3) withdrawing evidence that had been stipulated to by the parties and previously admitted; and (4) allowing Williams to introduce evidence of the same nature that LRHC was prohibited from presenting. The crux of this argument is that the circuit court excluded Valentine's post discharge medical evidence, which appellants argue was erroneous, prejudicial, and warrants a new trial. We agree.

One of the main defenses at trial of all appellants in the instant appeal was that Valentine's medical decline, regardless of which care facility she was located at or received treatment from, illustrated that her medical problems were the result of inevitable medical decline rather than negligence. However, the circuit court, during LRHC's opening statement, granted a

motion to exclude any and all mention of Valentine's medical condition and treatment subsequent to August 11, 2004.

Williams argued to the circuit court that because the claim against Quapaw, a subsequent care provider for Valentine, had been dropped, Valentine's medical records and evidence regarding her health during that time was irrelevant. The circuit court agreed, finding that the lawsuit was "really about what happened up until August 4th." As a result, LRHC, Heartland, and Bedell were prohibited from making any mention of Valentine's medical condition or treatment after August 11, 2004, and the circuit court later withdrew from the record pertinent joint exhibits, exhibits 11 through 15, to which had previously been stipulated.

On appeal, we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion nor will we reverse absent a showing of prejudice. *See Grummer v. Cummings*, 336 Ark. 447, 986 S.W.2d 91 (1999); *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). Moreover, the balancing of probative value against prejudice is a matter left to the sound discretion of the circuit court, and its decision on such a matter will not be reversed absent a manifest abuse of that discretion. *See Grummer, supra.*

As the circuit court determined this evidence was not relevant, it did not engage in a balancing analysis under Ark. R. Evid. 403 (2011). Accordingly, our review on appeal is limited to the issue of whether the circuit court abused its discretion in granting Williams's motion in limine on the basis that the evidence was not relevant. *See McCoy v. Montgomery*, 370 Ark. 333, 259 S.W.3d 430 (2007); *Yeakley v. Doss*, 370 Ark. 122, 257 S.W.3d 895 (2007).

Pursuant to Ark. R. Evid. 401 (2011), "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Arkansas Rule of Evidence 402 (2011) provides that irrelevant evidence is inadmissible.

In the instant case, Williams asserted claims of ordinary negligence, medical malpractice, and violation of the Residents' Right Act, all of which require proof of causation as an element. The heart of the case was that Valentine's caregivers were negligent in their treatment of the pressure sore on Valentine's coccyx and, as such, caused the pressure sore to worsen. The main defense, developed during discovery, was that Valentine's general medical condition, and not her care or lack thereof, was the proximate cause of her pressure sores and declining health.

Appellants assert that proof of this theory was found in the medical records from the months following Valentine's residency with LRHC, which showed that Valentine continued to develop new pressure sores on her ankles and feet despite receiving care at another facility and wound treatments. Appellants further argue that this evidence also showed that the pressure sore on Valentine's coccyx continued to worsen, increased in size, and became infected. Additionally, appellants claim that all of this evidence, which was contained in Valentine's medical records, tended to show that her general medical condition was the proximate cause of Valentine's injuries rather than her care.

The evidence excluded contained information that spoke to the exact medical issues of Valentine that Williams complained of in her case. The records excluded related to the continued progression of the same wound complained of in the instant case, as well as the development of additional, similar wounds that Valentine developed following her time at LRHC. Moreover, the excluded evidence

was proximate in time to the issues in the instant case. Specifically, the excluded evidence in this case related to Valentine's medical condition ⌐₁₂from August 11, 2004, through her death, a time period that began approximately five weeks after Valentine left the care of LRHC and continued for a little over six months.

We hold that the circuit court abused its discretion by excluding this evidence, which was clearly relevant in the instant case.[1] In doing so, the circuit court allowed LRHC and Heartland to, at the last minute, be stripped of an entire defense that had been clearly developed throughout the litigation to the full knowledge of Williams. Therefore, the circuit court also abused its discretion in failing to grant them a new trial. For this reason, we reverse and remand for a new trial.

■ We address the remaining points argued on appeal to the extent they are likely to arise in retrial. First, LRHC and Heartland contend that the circuit court erred by permitting Williams's expert, Suzanne Frederick, to testify as to the meaning of dignity as it is used in the Arkansas Residents' Rights Statute, Ark.Code Ann. § 20–10–1204(a)(21), because that was an issue squarely within the common understanding of an average juror. Williams avers that the term dignity, as used in the statute, is a term of art; that prior to Frederick's testimony about the definition, another witness also testified about its definition without objection; and that the argument is contradictory to another argument made by appellants that the term needed to be found void for vagueness. We agree with LRHC and Heartland that

the testimony should not have been permitted.

⌐₁₃Our case law provides that we review the admission of expert testimony under an abuse-of-discretion standard. *See Bayer CropScience LP v. Schafer*, 2011 Ark. 518, 385 S.W.3d 822. In discussing our standard of review for evidentiary rulings, we have said that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *See id.*

First, we find no merit in Williams's argument that LRHC and Heartland waived this argument by not objecting to the testimony regarding the definition of dignity by another witness because that particular witness was not qualified as an expert. Here, part of the argument of LRHC and Heartland is that the testimony should not have been allowed to come from someone qualified as an expert as expert testimony is given a higher degree of credibility than the testimony of an average witness.

The pertinent part of the Arkansas Residents' Rights Act, Ark.Code Ann. § 20–10–1204(a)(21) (Repl.2005) states:

(a) All long-term care facilities shall adopt and make public a statement of the rights and responsibilities of the residents of the facilities and shall treat the residents in accordance with the provisions of that statement. The statement shall assure each resident of the following:

. . . .

(21) The right to be treated courteously, fairly, and with the fullest measure of

---

1. Appellants additionally argue that the circuit court erred by allowing Williams to present evidence from after August 11, 2004. They contend that it was blatantly unequal and fundamentally unfair because, if evidence after August 11, 2004, was not relevant for the defense, it was equally irrelevant to the plaintiff. However, we need not address this argument as we hold that the circuit court erred in excluding the post-discharge evidence.

dignity and to receive a written statement and an oral explanation of the services provided by the licensee, including those required to be offered on an as-needed basis.

Williams's expert, Frederick, provided the following testimony as an expert:

ATTORNEY[2]: Going back, based upon your knowledge, training and skill, Ma'am, can you give the ladies and gentlemen of the jury a working definition of the word dignity as it relates to long term care?

FREDERICK: Okay. And I may not define it properly as far as the law goes, but dignity is being provided the care and services that an individual deserves based on their condition, meeting their daily basic needs. Not being neglected, not being mistreated and abused. And being—meeting their needs and providing services so that they attain and maintain their highest practicable condition.

ATTORNEY: And did you make a determination as to whether or not Ms. Valentine was treated with the fullest measure of dignity?

FREDERICK: I did make a determination.

ATTORNEY: And what is your opinion?

FREDERICK: It's my opinion that they violated this. They did not provide care to ensure that her dignity was maintained. For example, she was vulnerable and totally dependent when she was moved to this nursing home, and they knew it. And to not turn and reposition her and let her skin break down and develop sores. To not provide incontinent care and let her lay in feces and urine is not dignified care. To not—to not bathe her routinely. To not provide her basic nutrition and hydration to a human being when they knew that she was totally dependent on them when she was admitted is not dignified care.

The general test for the admissibility of expert testimony is whether certain scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. *See* Ark. R. Evid. 702 (2011). This court has taken the position that the opinion of an expert is not admissible if the point in issue is not beyond the comprehension of the jury. *See Missouri Pac. R.R. Co. v. Biddle*, 293 Ark. 142, 732 S.W.2d 473 (1987). Additionally, where the introduction of expert testimony would invade the function of the jury or where it does not help the jury, the testimony is not admissible. *See Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325.

The word dignity, simply because it is part of a statute, is not complex and does not mean something different than its ordinary and usually accepted meaning in common language. And, in statutory construction, one of the most basic rules is that words in a statute are given their ordinary and usually accepted meaning in common language. *See Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, 386 S.W.3d 385.

Additionally, none of the facts presented to the jury by Frederick that she used in explaining her definition of dignity and her opinion that Valentine had not been treated with such was beyond the comprehension of the average juror. We cannot find any reason to say that an average juror would not be competent to determine from the facts, when considered together, whether Valentine was treated with dignity. This court has held that it is prejudicial error to admit expert testimony on issues which could conveniently be demonstrated to the jury from which they could

---

2. "ATTORNEY" was counsel for Williams.

draw their own conclusions. *See St. Louis Sw. Ry. Co. v. Jackson,* 242 Ark. 858, 416 S.W.2d 273 (1967). For these reasons, we hold that the circuit court erred by admitting expert testimony on the meaning of dignity.

LRHC and Heartland next contend that the circuit court erred as a matter of law by ruling that Ark.Code Ann. § 16–114–207(3) did not apply to the nurses in the instant case because they did not testify against themselves, but rather against their employer, LRHC. The appellants contend that such an interpretation renders section 16–114–207(3), in large part, meaningless. LRHC and Heartland additionally argue that the circuit court erred in its alternative ruling, that section 16–114–207(3) was unconstitutional. Williams avers that the circuit court's interpretation was reasonable; that, regardless, this case fell outside the statute; and that, should this court hold that the statute does apply here, the circuit court was correct in finding it unconstitutional.

This court reviews issues of statutory interpretation de novo, because it is for this court to determine the meaning of a statute. *See Dachs v. Hendrix,* 2009 Ark. 542, 354 S.W.3d 95.

Prior to trial, LRHC moved to prohibit Williams from seeking expert opinions from its nurse employees pursuant to Ark.Code Ann. § 16–114–207(3) (Repl.2006), which provides in pertinent part as follows: "In any action for medical injury . . . [n]o medical care provider shall be required to give expert opinion testimony against himself or herself as to any matters set forth in § 16–114–206 at a trial." However, the circuit court denied the motion and found that section 16–114–207(3) did not apply because the nurses were not being called to testify against themselves, but rather against their employer, LRHC. Additionally, the circuit court ruled, in the alternative, that section

16–114–207(3) was unconstitutional under the separation-of-powers doctrine.

For purposes of section 16–114–207(3), "medical care provider" is defined to include various medical-care entities such as hospitals, nursing homes, community health centers, and clinics, in addition to individual medical professionals. *See* Ark.Code Ann. § 16–114–201(2). Clearly, a legal entity such as a hospital or nursing home cannot literally give testimony against itself. Rather, it is the people that make up such an entity, that is, the entity's officers, directors, employees or agents, who can testify on its behalf. Moreover, section 16–114–207(3) clearly speaks in regard to expert medical testimony and, as such, the officers, directors, and other administrators of such medical care entities generally could not be called upon to give expert opinion testimony on medical issues. It follows that only those medical professionals employed by the entities, such as their physicians and nurses, could be called upon to give expert medical testimony against the entity itself under the meaning of section 16–114–207(3). Were we to interpret the statute to allow for an employee of a medical-care provider to give expert testimony against that provider, we would render the statute meaningless in regard to hospitals, nursing homes, and other entities. We construe statutes so that no word is left void, superfluous, or insignificant, and we give meaning to every word in the statute, if possible. *See Rylwell, L.L.C. v. Arkansas Dev. Fin. Auth.,* 372 Ark. 32, 269 S.W.3d 797 (2007). Therefore, we hold that the statute does apply to the nurse employees of LRHC, and the circuit court erred in finding otherwise.

As for the circuit court's alternative ruling that the statute is unconstitutional, we reverse that finding as well. In short, section 16–114–207(3) simply creates

a privilege for purposes of trial. It gives medical care providers, or their representatives (where the provider is an entity), the privilege to refuse to testify as to the matters set forth in section 16–114–206. This court has specifically given the General Assembly the power to enact statutes regarding testimonial privilege. *See* Ark. R. Evid. 501 (no person has a privilege to refuse to testify or prevent another from being a witness "except as otherwise provided by constitution *or statute*") (emphasis added). Therefore, this section does not violate the separation-of-powers doctrine.

We note that in addition to the medical-malpractice claim, a claim was made for ordinary negligence and was carried to a jury verdict. Williams argues that the privilege created by section 16–114–207(3) only applies in medical-malpractice claims and because there are additional claims made here, it does not apply. While the nurses could certainly testify as to the facts, the privilege did not lose all effect simply because a cause of action by a different name was asserted. Therefore, the appellants were still protected by the privilege as to any testimony by the nurses regarding their opinions about "matters set forth in section 16–114–206."

 For their fourth point on appeal, LRHC and Heartland argue that the circuit court erred by giving the jury an instruction on the Residents' Rights claim that omitted causation as a separate element of proof. Williams avers that the way the statute is written, whenever it is proven that a resident is in fact deprived of any of his or her rights contained within the statute, the statute holds she is injured and adding causation would be redundant when instructing the jury.

 Under Arkansas law, a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *See Barnes v. Everett,* 351 Ark. 479, 95 S.W.3d 740 (2003). We will not reverse a circuit court's refusal to give a proffered instruction unless there was an abuse of discretion. *See id.*

 The Resident's Rights Act provides the following regarding civil enforcement:

(a)(1) Any resident who is injured by a deprivation or infringement of his or her rights as specified in this subchapter may bring a cause of action against any licensee responsible for the deprivation or infringement.

(2) The action may be brought by the resident or his or her guardian or by the personal representative of the estate of a deceased resident.

(3) The action may be brought in any court of competent jurisdiction in the county in which the injury occurred or where the licensee is located to enforce such rights and to recover actual and punitive damages.

(4) *The resident may seek to recover actual damages when there is a finding that an employee of the long-term care facility failed to do something which a reasonably careful person would do or did something which a reasonable person would not do under circumstances similar to those shown by the evidence in the case, which caused an injury due to an infringement or a deprivation of the resident's rights.*

(5) No separate award of attorney's fees may be made by the court.

Ark.Code Ann. § 20–10–1209(a) (Repl. 2005) (emphasis added). Therefore, there first must be a finding that an employee erred in failing to do something or erred by doing something. Secondly, that error must have caused injury as a result of an infringement or deprivation of the resident's rights. There is, indeed, a causa-

tion element in the plain language of the statute instructing when a resident may seek actual damages. After a review of the jury instruction given in the instant case, the jury was simply instructed that Williams had to prove that LRHC infringed or deprived Valentine of certain statutory resident's rights. While a definition of proximate cause was given to the jury, proximate cause was never used in connection with the instruction on resident's rights. When a jury instruction is erroneous or misleading, it is prejudicial and should not be given to the jury. *See Bailey v. Rose Care Ctr.*, 307 Ark. 14, 817 S.W.2d 412 (1991). Therefore, we hold the circuit court abused its discretion in not including in the instruction to the jury the causation element required when damages are sought for a violation of residents' rights.

LRHC and Heartland also take issue with the jury instruction given on spoliation and argue it should not have been given because there had been no evidence that certain documents had been intentionally destroyed or suppressed. Williams avers that the circuit court did not abuse its discretion in finding that enough evidence existed to support the inference and giving the instruction.

Appellants do not allege that the instruction was an incorrect statement of the law. Therefore, the only issue is whether or not there was some basis in the evidence to support a spoliation instruction. This court recently, in *Bunn Builders, Inc. v. Womack*, 2011 Ark. 231, 2011 WL 2062393, noted that Arkansas case law on spoliation is sparse. In *Bunn Builders*, we held that under Arkansas law, a circuit court is not required to make a specific finding of bad faith on the part of the spoliator prior to instructing the jury and that the AMI correctly and adequately sets forth the law with respect to spoliation of evidence and the adverse inference to be drawn from it. *See id.* Additionally,

in that case, because the circuit court clearly found that the party against whom the instruction was given had intentionally destroyed evidence in the case, we held that the circuit court had not abused its discretion by instructing the jury on spoliation of evidence.

■ In the instant case, the circuit court did not make a finding that LRHC had destroyed the documents at issue, the Activities of Daily Living Flowsheets (ADL sheets). Additionally, no evidence was presented to suggest that the ADL sheets had been destroyed. Williams argues that because federal law required LRHC to maintain and safeguard ADL sheets and the ADL sheets could not be located, intentional destruction of evidence was clearly at issue. However, we disagree. While Williams might have been able to make that leap in argument to the jury, we hold that evidence of those facts alone—that ADL sheets were required to be maintained; that ADL sheets existed at one time; but that ADL sheets were not produced—does not support a basis for a spoliation instruction. Therefore, we hold that the circuit court abused its discretion by giving the spoliation instruction in the instant case.

■ Lastly, Heartland contends that the circuit court erred in denying its directed-verdict motion because Williams failed to prove that Heartland had been the employee leasing company to lease the administrator, Dan Yancey, and the director of nursing, Helen Jones, to LRHC during the relevant time period. Without such proof, Heartland contends that there was insufficient evidence to show that Heartland owed Valentine a duty of care. Williams avers that there was evidence in the record sufficient to show that Heartland was the employer of Yancey and Jones. Furthermore, Williams argues, the

contradictory evidence only created a question of fact for the jury.

Having already set forth our standard of review for a denial of a directed-verdict motion, we turn then to whether the circuit court erred in denying Heartland's motion. It did not.

The relevant evidence presented at trial as to what company had employed Yancey and Jones is the following. Brad Bedell, through his videotaped deposition, initially testified that Heartland was the employee leasing company for LRHC in 2004. He later stated, "I believe I may have misspoken earlier. [In] 2004, HC Services and Solutions was leasing those . . . the administrator and [director of nursing] at this facility in 2004." Dan Yancey also testified that he and Jones had been employees of HC Services and Solutions in 2004. However, in his deposition he said he had heard of HC Services and Solutions, but did not know he had worked for them. On redirect examination, he clarified that after the subject had arisen during his deposition, he was curious and researched it. Yancey testified that at the time of his deposition, he believed he had worked for Heartland. One of Williams's experts, Dr. Lipson, merely stated that, "from the best of his understanding," Heartland had supplied LRHC with an administrator and a director of nursing. Finally, an employee leasing agreement between Heartland and LRHC dated April 1, 1996, was admitted into evidence, although it was from nearly eight years prior to the relevant time period of Valentine's residency at LRHC.

As Williams argued, the evidence presented created a question of fact, and the evidence simply conflicted as to this issue. As our standard of review dictates, a motion for directed verdict should be denied when there is conflict in the evidence; therefore, the circuit court did not err by doing so.

For all the above reasons, we reverse, dismiss appellant Bedell, and remand for a new trial on Williams's claims against LRHC and Heartland.

Reversed and dismissed in part; reversed and remanded in part.