COURTNEY HUDSON GOODSON, Justice, dissenting. I cannot agree with the majority’s decision to affirm the circuit court’s ruling to exclude evidence of seat belt noncompliance pursuant to Arkansas Code Annotated section 27-37-703 (Repl.2008). Therefore, I must dissent. The record reflects that on August 23, 2000, at approximately 10:30 a.m. in Pine Bluff, thirty-eight-year-old Johnny Ray Washington, the decedent, and his son, Terian, a passenger in the front seat, were traveling in a 1994 Ford Explorer when another vehicle driven by Karah Allen Williams ran a stop sign and struck the driver’s side of the Explorer. As a consequence of the collision, the decedent’s vehicle slid toward and over a curb, rolled over twice, and landed right-side up. As the vehicle rolled, the glass of the driver-side window shattered. The decedent’s head traversed the plane of the window, and a portion of his skull was crushed by the vehicle’s frame. When emergency personnel arrived at the scene, he was | ⅝,⅛ severe distress because of his head trauma, and an ambulance transported him to Jefferson Regional Medical Center. On arrival, the decedent did not have a pulse, and he had visible and palpable massive head injuries. Blood was coming out of both ears, his nose, and his mouth. The decedent’s brain tissue also protruded from both of his ears. He later died, but his son survived the accident. On appeal, Ford argues that the circuit court abused its discretion by excluding evidence that the decedent was not wearing his seat belt at the time of the accident and that he would have survived if he had been belted. Ford contends that the circuit court’s ruling that Ford had not met its burden under Arkansas Code Annotated section 27-37-703 was a prejudicial abuse of discretion that merits reversal. Specifically, Ford asserts that it sufficiently established noncompliance; that the decedent’s injuries would have been reduced had he been restrained; and that the extent of such a reduction would have been significant. Ford also contends that Washington opened the door to the admission of testimony concerning nonuse by offering testimony that the decedent was belted. The particular facts surrounding this issue are as follows. Washington filed her complaint, stating that “[a]t all times during the accident, including at the time of the rollover, [the decedent] was wearing his seat belt.” In its answer to Washington’s complaint, Ford specifically alleged that the “decedent failed to wear his seat belt as required by the Arkansas Mandatory Seat Belt Act, Ark.Code Ann. § 27-37-701, and that had he complied with this Act, his injuries would have been reduced.” On the first day of trial, during voir dire, Ford asked jurors questions about their attitudes on seat belt use. Washington objected to this line |2Bof inquiry, and the circuit court sustained the objection. The court noted that Ford had not requested a hearing for the court to determine the admissibility of evidence concerning seat belt nonuse under section 27-37-703, and the court ruled that Ford could not broach the subject without complying with the statute. On the second day of trial, Washington introduced excerpts from the deposition of Timothy Clowers, a paramedic who arrived at the scene of the accident but who had died before trial. In his deposition, which was read to the jury, Clowers testified that “from the best of my recollection,” he remembered having to undo the decedent’s seat belt before tending to his injuries. Ford objected to this testimony and argued that Washington had opened the door to seat belt evidence and that Ford would be unfairly prejudiced if it were not allowed to rebut that proof by submitting its evidence of seat belt nonuse. The circuit court overruled the objection. In further testimony, Washington’s counsel referred Clowers to a notation contained in the decedent’s emergency-room records stating, “motor vehicle accident, unrestrained driver.” Clowers stated that he did not recall telling emergency-room personnel that the decedent was or was not restrained, but he said that this kind of information contained in medical records is typically based on facts that are reported by him. Clowers said that he could not disagree with the notation without knowing the basis for it, but he said that, in his experience, emergency-room personnel generally assume that a person was not restrained when the person is ejected from the vehicle. On cross-examination, Clow-ers said that he did not have a specific recollection of unfastening the decedent’s seat belt. He also did not specifically recall whether the shoulder harness was positioned across the | ^decedent’s torso. Later that same day, Ford filed a motion for the admission of evidence of the decedent’s failure to wear a seat belt, pursuant to section 27-37-703. In the motion, Ford requested a hearing and argued, among other things, that the deposition testimony of Dr. Robert Piziali established the prerequisites of the statute. The following day, the circuit court held a brief hearing outside the presence of the jury to address the issue of the decedent’s seat belt use. Ford did not tender any witnesses but relied solely on the deposition testimony of Dr. Piziali, who concluded that the decedent was not wearing a seat belt during the accident. Ford argued that, notwithstanding the general rule that seat belt nonuse is generally inadmissible, it fulfilled the statutory requirements outlined in section 27-37-703. From the bench, the court denied Ford’s motion for admission of evidence of the decedent’s failure to wear a seat belt. The sole issue is whether Ford met its statutory burden under section 27-37-703. Pursuant to subsection (a)(2)(C), Ford had the burden of proving the decedent’s noncompliance; that compliance would have reduced the decedent’s injuries; and the extent of the reduction of injuries. To meet this burden, Ford submitted the deposition testimony of Dr. Piziali, who is an expert in the way occupants of vehicles interact with seat belts. Dr. Piziali offered the opinion that the decedent was not restrained at the time of the accident. In reaching that opinion, Dr. Piziali examined the Ford Explorer, and he reviewed the decedent’s medical records. As support for his opinion, Dr. Piziali stated that there were no marks on the restraint system and that there were no marks on the decedent’s body. He | a7further specified, “When we say no marks on the restraint system and no marks on Mr. Washington, we’re talking about the belt making marks on Mr. Washington. We didn’t find that or see any evidence of that.” Next, Dr. Piziali noted that there was no evidence of blood splatters on the decedent’s seat belt. He submitted a report discussing eviden-tiary findings of numerous blood splatters throughout the vehicle, but there was a noticeable absence of blood anywhere on the seat belt. Given the amount of blood loss from the decedent’s head, Dr. Piziali opined that blood would have appeared on the seat belt had the decedent been wearing it. Further, Dr. Piziali testified that the position of the decedent’s head was inconsistent with restraint use. Dr. Piziali explained that, in a rollover accident, centrifugal forces will tend to move the body up and out if the person is restrained. He stated that a person’s head would be pushed toward a roof rail area but would not exit the vehicle and “get ... in the position to where he could be injured against the B pillar [of the vehicle] like Mr. Washington did.” Dr. Piziali added, “[I]f Mr. Washington was belted, he couldn’t end up in the position he was in when he got injured and then killed.” Ultimately, Dr. Piziali concluded that one “hundred percent of physical evidence would indicate he was not restrained, and except for the mixed testimony [Clowers’s testimony indicating that the decedent was restrained vs. the statement in the medical records that he was not], there’s really no support for him being restrained.” As to the requirement of showing a reduction in injuries, Dr. Piziali testified that the decedent’s compliance would have reduced his injuries. In his sworn testimony, Dr. Piziali concluded that “[i]f Mr. Washington had been properly restrained, it is unlikely that he would have been fatally injured.” With regard to the burden of proving the extent of the reduction |28of such injuries, Dr. Piziali stated that the vehicle rolled two times, which was “not a very high number of rolls,” and that “belted occupants are very well protected in rollover accidents.” He said that statistically “only 0.3 or 0.4 percent ... of belted occupants are fatally injured in rollover accidents.” My examination of Dr. Piziali’s testimony leads me to conclude that the circuit court abused its discretion by excluding Ford’s proffered testimony. Dr. Piziali offered cogent reasons to support his opinion that the decedent was not wearing a seat belt at the time of the accident. There were no marks on the decedent’s body indicative of seat belt use. There was no blood on the seat belt although the decedent was bleeding, and there was blood elsewhere in the vehicle. Dr. Piziali testified that the decedent’s head would not have exited the vehicle had he been wearing a seat belt. Furthermore, his testimony that the decedent likely would have survived the accident had he worn a seat belt suffices as evidence demonstrating both a reduction in injuries and the extent of the reduction of such injuries. Overall, Dr. Piziali’s testimony tended to show that the decedent’s head might not have been crushed and that he could have survived the accident if a seat belt had been in use. Without question, the difference between life and death is a considerable reduction in the extent of injury. Moreover, Ford persuasively argues that Washington invited rebuttal by offering the testimony of Clowers that the decedent was not wearing a seat belt. This court has long held that, when a proponent opens the door to a line of questioning, the opposing party may “fight fire with fire” by introducing rebuttal evidence on that issue, even if the rebuttal evidence is not otherwise admissible. Pursley v. Price, 283 Ark. 33, 34, 670 S.W.2d 448 (1984). By not 12!)permitting this testimony, the circuit court allowed Ford, on the second day of trial, to be stripped of an entire defense that had been clearly developed throughout the litigation. See Bedell v. Williams, 2012 Ark. 75, 386 S.W.3d 493. Also, had the jury been given the opportunity to hear this evidence, then it could have weighed Dr. Piziali’s testimony against the testimony of Clowers, who had no distinct memory of whether the decedent was belted. The rank unfairness of this is palpable. I acknowledge that the abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court’s decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. FMC Corp., Inc. v. Helton, 360 Ark. 465, 202 S.W.3d 490 (2005). However, our review is not meaningless, and I am convinced that an abuse of discretion occurred in this instance. The statute does not erect an insurmountable barrier to the introduction of evidence regarding nonuse of a seat belt. Instead, it merely purports to set guidelines for when nonuse is deemed relevant. I can conceive of no clearer case than the one here for the admission of evidence of seat belt noncompliance, particularly when the testimony of seat belt use was equivocal. Nonetheless, the majority affirms the circuit court’s decision to exclude Ford’s evidence indicating that the decedent was not wearing a seat belt. In so holding, the majority merely parrots the circuit court’s reasoning, but it does not engage in a critical analysis of the court’s decision. Contrary to the circuit court’s findings, Dr. Piziali did not speak in terms of generalities. He offered specific reasons outlining the facts that formed the basis of his opinion, and his opinion was supported by statistics, that Washington did not question, [ ^indicating that the probability of death is remote in a rollover accident when an occupant is belted. Dr. Piziali did testify that blood splatter was present in the vehicle, just not on the seat belt. Although Dr. Piziali did not say what sort of injury the decedent might have sustained had he been belted, the statute does not require such exactitude. Pinpointing with precision what those injuries might have been would require pure speculation, and thus insisting on such specificity cannot be test for admissibility. The opinion that the decedent’s head would not have exited the vehicle and that he would have survived had a seat belt been worn sufficed to meet the requirements of the statute. Further, Dr. Piziali did testify as to what normally happens to a body in a rollover accident. Washington did not challenge Dr. Piziali’s expertise, and he was qualified as an expert in bioengineering. Although the circuit court was “troubled” by these things, the court’s reasoning simply does not support the exclusion of the testimony. Without question, Ford met the requirements of the statute, and the circuit court abused its discretion by excluding the evidence. The majority’s refusal to apply our settled rule of “fighting fire with fire” is also disturbing. This rule is applied even when the rebuttal evidence is not admissible under the rules of evidence promulgated by this court. To say that the rule of fighting fire with fire does not apply to a statutory rule of evidence elevates the statutory rule to a plane higher than our own rules of evidence. I think not. BAKER and HART, JJ., join.